■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GARY ARNOLD, Appellant. [924 NYS2d 679]—

Peters, J.P. Appeal from a judgment of the County Court of Schoharie County (Bartlett, III, J.), rendered November 4, 2009, upon a verdict convicting defendant of the crimes of criminal sexual act in the second degree (two counts), rape in the second degree (four counts) and sexual abuse in the second degree (four counts).

The victim (born in 1993) lived with her mother and Joanne Arnold (hereinafter Arnold), her mother's then-partner, until 2002 when their relationship ended. After moving out of Arnold's house, the victim and her younger sister continued to have regular visitation with Arnold. At some point thereafter, Arnold became romantically involved with defendant and, in 2004, they were engaged to be married. In November 2005, Arnold moved into defendant's house and the victim and her sister continued to visit her there. According to the victim, who was 12 years old at the time, defendant began to sexually abuse her during these visits with the abuse escalating over the next two years.

In August 2007, the victim attempted to confide in defendant's sister, who lived next door to defendant and Arnold, by slipping a note in her pocketbook that stated that someone was hurting her. The following week, the victim revealed to defendant's sister that someone was sexually abusing her, but she refused to identify who. The victim then confided in her counselor about the abuse, after which an investigation ensued by the police and Child Protective Services. When the authorities arrived at the victim's school to speak with her, however, she recanted her accusations and told them nothing had happened. At the conclusion of the investigation in December 2007, the victim resumed her regular visits with Arnold. In March 2008, on the same day that she became upset over certain e-mails that defendant had allegedly deleted from her e-mail account, the victim spoke to Arnold, confirmed her previous allegations and identified defendant as her abuser. She subsequently met with and imparted this information to her counselor, who again notified the appropriate authorities.

After the victim provided a supporting deposition to police regarding the abuse, defendant was arrested and indicted on two counts of criminal sexual act in the second degree (*see* Penal Law § 130.45 [1]), four counts of rape in the second degree (*see* Penal Law § 130.30 [1]) and four counts of sexual abuse in the second degree (*see* Penal Law § 130.60 [2]). Following a jury trial, defendant was convicted on all counts. Defendant thereafter unsuccessfully moved to set aside the verdict on the ground that his trial counsel was ineffective. He now appeals.

Initially, defendant contends that the verdict is against the weight of the evidence. The victim's in-court testimony as to the alleged sexual abuse represented the sole evidence against defendant. She explained how she and defendant often had opportunities to be alone during her visits with Arnold at their home, and described the six separate instances of sexual abuse allegedly perpetrated upon her by defendant between November 2005 and August 2007 at that location. Upon questioning by the People, the victim testified that she initially recanted her allegations because she was afraid of losing her relationship with Arnold and defendant's sister.

In his defense, defendant presented the testimony of Arnold and his sister. Arnold testified that when the children visited her, they were always in her care and never left alone with anyone else. She also stated that the victim was not at their home on at least two of the dates that the alleged abuse occurred, and explained that much of the house was an open space, particularly the living room where the victim claimed that some

of the abuse took place. However, Arnold also admitted, consistent with the victim's testimony, that she went to sleep before defendant at times, was out of the house on Wednesdays for a few hours, and that the addition to the house, in which at least some of the abuse allegedly took place, was separated from the rest of the home by a wall and a doorway. Defendant also introduced into evidence two e-mails from the victim to her counselor authored prior to her reaccusation, in which the victim stated that the "whole [defendant] thing is a story," that she "made [it] up" because she hates and distrusts him, and that she should have thought more before accusing him because she "never understood what the consenquences [sic] would be."

Since an acquittal would not have been unreasonable in light of this evidence, we must "weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (*People v Bleakley*, 69 NY2d 490, 495 [1987] [internal quotation marks and citation omitted]; *see People v Danielson*, 9 NY3d 342, 348 [2007]; *People v Houghtaling*, 82 AD3d 1493, 1494 [2011]). Contrary to defendant's contention, the victim's testimony was not so inherently unbelievable as to be unworthy of belief, and the fact that she initially recanted her accusations presented questions of credibility for the jury to resolve (*see People v Reynolds*, 81 AD3d 1166, 1166-1167 [2011]; *People v Nowinski*, 36 AD3d 1082, 1084 [2007], *lv denied* 8 NY3d 989 [2007]).* According deference to those credibility determinations and viewing the evidence in a neutral light, we cannot say that the verdict was contrary to the weight of the evidence (*see People v Reynolds*, 81 AD3d at 1167; *People v Rosa*, 57 AD3d 1018, 1020 [2008], *lv denied* 12 NY3d 762 [2009]; *People v Pomales*, 49 AD3d 962, 963 [2008], *lv denied* 10 NY3d 938 [2008]; *People v Frary*, 29 AD3d 1223, 1225 [2006], *lv denied* 7 NY3d 788 [2006]).

A new trial is required, however, because defendant was deprived of the effective assistance of counsel. To prevail on a claim of ineffective assistance, a defendant must demonstrate that he or she was deprived of a fair trial by less than meaningful representation (*see People v Hobot*, 84 NY2d 1021, 1022 [1995]; *People v Miller*, 63 AD3d 1186, 1186 [2009]). It is incumbent upon the defendant to demonstrate the absence of strategic or other legitimate explanations for counsel's alleged shortcomings (*see People v Benevento*, 91 NY2d 708, 712 [1998];

---

* Although defendant argues that the significant discrepancies between the victim's accusations in her supporting deposition and her trial testimony further demonstrate her lack of credibility, those inconsistencies were never placed before the jury.

*People v Rivera*, 71 NY2d 705, 709 [1988]). Mindful that we "must avoid confusing 'true ineffectiveness with mere losing tactics and according undue significance to retrospective analysis' " (*People v Benevento*, 91 NY2d at 712, quoting *People v Baldi*, 54 NY2d 137, 146 [1981]; *accord People v Jones*, 70 AD3d 1253, 1256 [2010]), we nevertheless conclude that defendant has satisfied that standard here.

Here, the deficiencies in defense counsel's representation commenced from opening statements. He failed to object to remarks by the prosecutor that improperly implied a special knowledge or expertise regarding the behavior of abused children and which vouched for the victim's veracity. In his opening statement, counsel promised the jury that he would put the victim's diary, a notebook and her Myspace messages into evidence and stated that this information "will just shock you," yet he never explained how this information would relate to why the victim would falsely accuse defendant, nor did he ever attempt to introduce any of the Myspace messages into evidence. Although his attempts to introduce portions of the victim's diary (as well as her notebook) were thwarted by the sustained objections of the prosecutor, counsel failed to make an appropriate offer of proof or otherwise demonstrate how this information was relevant to the victim's credibility. Even after counsel elicited responses from the victim that directly contradicted those statements in her diary, he did not attempt to impeach the victim with such prior inconsistent statements.

Critically, although the record reveals that defense counsel's primary trial tactic was to attack the credibility of the victim, he made no attempt to cross-examine her about the statements she had made in her supporting deposition to police, which was significantly at odds with the accusations she made against defendant during her trial testimony. In her supporting deposition to police, the victim claimed only that defendant had put his hand and mouth on her vagina; she never stated that defendant ever put his penis in her vagina. Yet, during her trial testimony, the victim accused defendant of penetrating her vagina with his penis during four of the six alleged instances of abuse. Given that the People's case rested almost entirely upon the credibility of the victim, we can perceive no strategic or legitimate tactical explanation for counsel's failure to impeach the victim with these prior inconsistent statements which, if properly utilized, may have cast doubt upon her testimony in relation to the rape charges (*see People v Cantave*, 83 AD3d 857, 858-859 [2011]; *People v Clarke*, 66 AD3d 694, 697 [2009]). More importantly, the glaring discrepancies between her statements

in the supporting deposition and her trial testimony may have undermined her credibility as a whole. In addition, by failing to impeach the victim with her inconsistent statements, counsel also wasted an invaluable opportunity to highlight those inconsistencies to the jury during his summation.

Furthermore, defense counsel's questioning of his own witnesses was directionless and largely ineffective, and he elicited testimony that reflected badly on defendant and actually served to bolster the victim's credibility. Moreover, counsel's summation was confused, ineffectual and did more to advance the prosecution's case than that of his own client. Counsel misstated the facts on a number of occasions, focused on irrelevant issues and, at one point, referred at length to testimony that had never been presented. His theory as to why the victim may have falsely accused defendant made no sense and, not unexpectedly, was seized upon and debunked by the prosecutor during his closing remarks. Notably, certain comments by counsel during his summation reflect his fundamental misunderstanding of the proof needed to convict his client of the charges (*see People v Miller*, 63 AD3d at 1187-1188; *see also People v Hampton*, 64 AD3d 872, 876-877 [2009], *lv denied* 13 NY3d 796 [2009]) and resulted in devastating consequences to the entire defense. To this end, after counsel stated to the jury that "there are charges in the indictment that . . . there was some type of sexual misconduct" on the part of defendant against the victim, he then proceeded to instruct the jury that the question it had to decide is "[w]hy did that take place" and "whether or not the actions were consensual . . . or posed a threat." Given that each and every one of the charges against defendant was based upon the victim's age, such activity, if it took place at all, was criminal, and whether it was consensual or posed a threat to the victim was entirely irrelevant. These statements, which were a product of counsel's failure to comprehend the nature of the criminal charges against his client, inexplicably implied— and may have been perceived by the jury as a concession—that the alleged sexual abuse had, in fact, occurred. Tellingly, this was the sole element the People had to prove.

The totality of the record reveals that defense counsel engaged in a prejudicial course of conduct throughout the trial (*see People v Zaborski*, 59 NY2d 863, 865 [1983]; *People v Dean*, 50 AD3d 1052, 1053 [2008]; *People v Vannoy*, 174 AD2d 790, 792 [1991]). While none of these errors or unexplained omissions on the part of counsel, standing alone, necessarily constitutes ineffective assistance, the cumulative effect of counsel's actions deprived defendant of meaningful representation (*see People v Clarke*, 66

AD3d at 697; *People v Miller*, 63 AD3d at 1188; *People v Chapman*, 54 AD3d 507, 511 [2008]; *People v Miller*, 11 AD3d 729, 730 [2004]; *People v Brown*, 300 AD2d 314, 315 [2002], *lv denied* 100 NY2d 560 [2003]; *see also People v Cantave*, 83 AD3d at 859).

Spain, Rose and Egan Jr., JJ., concur. Ordered that the judgment is reversed, on the law, and matter remitted to the County Court of Schoharie County for a new trial.