*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  October 16, 2014          104430
                                                106044

_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                        Respondent,

            v                              MEMORANDUM AND ORDER

MICHAEL MOSLEY,
                        Appellant.

_____

Calendar Date:  September 11, 2014

Before:  Peters, P.J., Lahtinen, Stein, Garry and Devine, JJ.

_____

        Mitch Kessler, Cohoes, for appellant, and appellant pro se.

        Arthur F. Glass Jr., Acting District Attorney, Troy (Kelly
L. Egan of counsel), for respondent.

_____

Lahtinen, J.

        Appeals (1) from a judgment of the County Court of
Rensselaer County (Jacon, J.), rendered July 12, 2011, upon a
verdict convicting defendant of the crimes of murder in the first
degree and burglary in the first degree, and (2) by permission,
from an order of said court (Young, J.), entered July 29, 2013,
which denied defendant's motion pursuant to CPL 440.10 to vacate
the judgment of conviction, without a hearing.

        On January 25, 2002, Sam Holley and his girlfriend, Arica
Schneider, were murdered in their apartment in the City of Troy,
Rensselaer County.  Each victim's body had at least 30 stab
wounds as well as evidence of extensive blunt force trauma.
Holley had been a member of a gang and a crack cocaine dealer.

Although police were able to establish a DNA profile and usable palm print of a potential suspect from blood on a bed sheet and a palm print on the living room wall, they were unable to find a match in the state or federal databases.  After an investigation that included numerous false leads over more than five years, two men — Terrence Battiste and Bryan Berry (reputedly members of a gang known to target and rob drug dealers) — were indicted for the murders.  However, before the trial of Battiste and Berry commenced, a routine check of the DNA profile returned a match to defendant's DNA, which had recently been added to the state database.

Upon investigating defendant, police soon learned, among other things, that he had once served as a cocaine runner for Holley.  After interviewing defendant several times and gathering further evidence purportedly linking him to the crimes, the indictment against Battiste and Berry was dismissed without prejudice and defendant was charged with murder in the first degree, murder in the second degree (two counts) and burglary in the first degree.  A lengthy trial ensued during which defendant elected to testify and offered an explanation for the presence of his blood and palm print at the crime scene.  The jury nonetheless found defendant guilty of murder in the first degree and burglary in the first degree.  He was sentenced to life in prison without parole.  His subsequent CPL article 440 motion asserting ineffective assistance of counsel was denied without a hearing.  Defendant appeals from the judgment of conviction and, by permission, from the order denying his CPL article 440 motion.

Defendant asserts that the verdict was against the weight of the evidence pointing to, among other things, the absence of a motive for him to commit the crimes, the existence of others with a motive and his explanation at trial regarding the presence of his blood and palm print at the scene.  In our weight of the evidence review, where, as here, a different verdict would not have been unreasonable, we "must, like the trier of fact below, 'weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony'"(People v Bleakley, 69 NY2d 490, 495 [1987], quoting People ex rel. MacCracken v Miller, 291 NY 55, 62

[1943]).  "If [our] review of the record leads [us] to conclude that 'the trier of fact has failed to give the evidence the weight it should be accorded, then [we] may set aside the verdict'" (People v Romero, 7 NY3d 633, 643-644 [2006], quoting People v Bleakley, 69 NY2d at 495; see People v Danielson, 9 NY3d 342, 348 [2007]).  We give deference to the jury's credibility determinations since it had the "opportunity to view the witnesses, hear the testimony and observe demeanor" (People v Bleakley, 69 NY2d at 495; accord People v Beauharnois, 64 AD3d 996, 999 [2009], lv denied 13 NY3d 834 [2009]; People v Booker, 53 AD3d 697, 703 [2008], lv denied 11 NY3d 853 [2008]).

The extensive proof at trial included testimony about the crime scene, where both victims had been repeatedly stabbed with knives apparently from the kitchen of the apartment.  The Rensselaer County Medical Examiner noted that there were only two defensive wounds on Holley and none on Schneider, indicating that they were quickly overpowered.  The strength of the attacker was also reflected by the victims' blunt force trauma, with Holley having been beaten and having suffered a brain hemorrhage and bruising around his face and Schneider having been punched, causing a hemorrhage in her left eye, fractured nose and considerable facial bruising.  Forensic testing at the time of the 2002 investigation established that blood on a bed sheet was from an unknown party and a usable palm print was found in blood on a wall in the apartment.

In February 2010, the DNA profile from the scene was first discovered to match defendant's DNA, which had been recently added to the state database.  Police learned and defendant acknowledged that, in 2000, defendant had been a drug runner for Holley in what had been a significant source of sales at a local bar.  At that time, defendant was also a heavy drug user and was generally paid in cocaine.  After an incident at the bar curtailed Holley's sales there, defendant's role with Holley greatly diminished.  When defendant's girlfriend locked him out of their apartment because of his substance abuse problems in 2001, he went to live with his mother upon the condition that he would reform and find employment.  By the time of the murders in January 2002, defendant was employed by the University at Albany

and living with his mother in Saratoga County. In the meantime and prior to the murders, he had re-established a relationship with Holley.

Police testified that, after the DNA match, they interviewed defendant five times between March 2010 and June 2010 before he was arrested. Recordings of the interviews were received into evidence. It was not until the third interview, in mid-May 2010, that police revealed to defendant that his DNA was at the scene. This revelation invoked repeated comments from defendant to the effect that he had no clue why his DNA was there, he wished he had an explanation and he could not even make up a reason. Thereafter, his palm print was taken and found to match the crime scene print. When police interviewed defendant in June 2010, he claimed to then have an explanation for his blood and palm print, but stated that he was not going to tell the police. He said that he expected to be arrested and preferred to wait to trial to give his explanation. He was, in fact, arrested at such time.

The various evidence at trial also included defendant's former high school wrestling coach from the late 1980s, who remembered defendant as quick, strong and a championship wrestler. The coach had contact with defendant around the relevant time and recalled that he remained in good physical shape. Defendant's uncle, who supervised him at work at the University at Albany, reluctantly acknowledged that defendant missed work the week following the murders and that, when he saw defendant upon his return to work, he noticed a lot of swelling to one hand and cuts and bruises on the other. A forensics expert characterized the murder scene as indicative of flowing from an argument rather than a planned drug robbery or gang-related murder noting, among other things, the use of knives from the apartment as murder weapons.

Testifying on behalf of her son, defendant's mother recalled that he came home on the evening of January 24, 2002 with a hand injury, which he indicated occurred while snowboarding. She further recalled that he spent the night of the murders at her home in Saratoga County, and she related that

it was unlikely he could have left and returned in the middle of the night undetected because her dog would have barked. She claimed distinct recall of the pertinent events as January 25, 2002 had been her 50th birthday.

Defendant testified at trial and offered his explanation as to why his blood and palm print were at the crime scene. He stated that, after leaving work late in the afternoon of Thursday, January 24, 2002 and before it was totally dark, he had taken his young son snowboarding at Poestenkill Gorge Park in Troy and that he had fallen, injuring his hand. After leaving the gorge, he saw Holley, who lived near the gorge, and told Holley that he would give Holley a ride the next morning. Upon arriving the following morning at the apartment, no one answered the door, which was unlocked, so defendant entered. He discovered the blood-covered victims and shook them to see if they were alive. He claimed that traces of his blood and the mixed blood palm print were left at the scene because of such touching of the bodies, as well as the still bloody condition of the hand that he had injured snowboarding. He exited the apartment without then (or thereafter before trial) informing any law enforcement personnel or even family what he had encountered in the apartment. He stated that he kept it to himself because he was scared and did not want to get himself or his family involved, especially given his knowledge of Holley's drug and gang activities.

On cross-examination, the People were able to establish several inconsistencies in defendant's various statements and his trial testimony. He acknowledged not being truthful with police or his family regarding many events relevant to the crimes. Rebuttal by the People included a weather expert who stated that, on the day that defendant purportedly went snowboarding, it had rained in the region and that it was unlikely there was still enough snow on the ground for such activity.

In an effort to show that the People had not proven their case beyond a reasonable doubt, defendant, among other things, pointed out that two other individuals had been indicted in 2007 for the same crimes. Holley's drug and gang-related activities,

including the fact that he had aided authorities in the prosecution of another individual in New York City, were set forth as motives for others, as yet unidentified, to have committed the crimes. It was also noted that Holley reputedly kept considerable amounts of cash in the apartment, which could make him a target for robbery.

Clearly, significant credibility issues were presented to the jury over the course of the lengthy trial. The People presented ample evidence to establish that defendant committed the crimes and, significantly, the jury did not credit the explanation given by defendant for the presence of his DNA and palm print at the crime scene. Having reviewed the record and weighed the evidence, while according deference to the difficult assessments of credibility made by the jury, we are unpersuaded that the verdict was against the weight of the evidence.

Defendant next argues that his right to remain silent was violated. This issue was not preserved for our review (see People v Mandrachio, 55 NY2d 906, 907 [1982], cert denied 457 US 1122 [1982]; People v Clarke, 110 AD3d 1341, 1345 [2013], lv denied 22 NY3d 1197 [2014]) and, in any event, lacks merit. Despite ample warnings of his rights, defendant freely and extensively talked with police about his version of his role in the relevant matters, giving statements that revealed inconsistencies and omissions regarding important details. The use of such proof was not reversible error (see e.g. People v Savage, 50 NY2d 673, 677-678 [1980], cert denied 449 US 1016 [1980]; People v Clarke, 110 AD3d at 1345; People v Bierenbaum, 301 AD2d 119, 138 [2002], lv denied 99 NY2d 626 [2003], cert denied 540 US 821 [2003]).

We are unpersuaded that County Court abused its discretion by modifying one aspect of its pretrial Sandoval ruling based on testimony that unfolded at trial (see People v Ramirez, 60 AD3d 415, 416 [2009], lv denied 12 NY3d 928 [2009]; People v Marsh, 248 AD2d 743, 745 [1998], lv denied 92 NY2d 856 [1998]). The court permitted the People to ask defendant's mother on cross-examination about defendant's driving while intoxicated arrest that occurred in early March 2002, shortly after the murders, but

when he still lived with her. This was allowed to address the incorrect impression from her direct testimony that he had avoided all substance abuse during the time he resided with her.

Defendant asserts that he was prejudiced by various conduct of the prosecutor at trial. His contention regarding the prosecutor's reference to his tattoo was not properly preserved and we decline to exercise our interest of justice jurisdiction as to such issue. Our review of the additional allegedly improper conduct reveals neither "'a flagrant and pervasive pattern of prosecutorial misconduct'" (People v Burns, 68 AD3d 1246, 1249 [2009], lv denied 14 NY3d 798 [2010], quoting People v Demming, 116 AD2d 886, 887 [1986], lv denied 67 NY2d 941 [1986]) nor other grounds requiring reversal.

In support of his ineffective assistance of counsel argument, defendant relies on issues that are both record based and, via his CPL article 440 motion, non-record based. "[T]o establish ineffective assistance, a defendant must 'demonstrate the absence of strategic or other legitimate explanations' for counsel's allegedly deficient conduct" (People v Caban, 5 NY3d 143, 152 [2005], quoting People v Rivera, 71 NY2d 705, 709 [1988]). With respect to the non-record facts set forth in his CPL article 440 motion, defendant must show that they are material and, if established, they would entitle him to relief (see People v Satterfield, 66 NY2d 796, 799 [1985]). Defendant points to his two defense counsels' failure to, among other things, investigate and present evidence that Battiste and Berry actually committed the crimes (including witness testimony from that criminal prosecution that was dismissed without prejudice), counsels' failure to investigate and present evidence corroborating defendant's trial testimony explaining his presence at the crime scene and counsels' failure to call a number of witnesses to contradict testimony presented by the People. In support of this CPL article 440 motion, defendant submitted his 58-page affidavit with multiple exhibits, which set forth facts not contained in the record on appeal from his judgment of conviction and would, if established, entitle him to relief. Accordingly, we reverse County Court's order denying defendant's motion without a hearing and remit to County Court to hold a

hearing (see generally People v Beckingham, 116 AD3d 1298, 1300-1301 [2014]; People v Hennessey, 111 AD3d 1166, 1168 [2013]).

The remaining arguments have been considered and are lacking in merit.

Peters, P.J., Stein, Garry and Devine, JJ., concur.

ORDERED that the judgment is affirmed.

ORDERED that the order is reversed, on the law, and matter remitted to the County Court of Rensselaer County for further proceedings not inconsistent with this Court's decision.

ENTER:

Robert D. Mayberger
Clerk of the Court