McCarthy, J.P.
Appeals (1) from a judgment of the County Court of Albany County (Herrick, J.), rendered June 6, 2012, upon a verdict convicting defendant of the crimes of rape in the first degree and criminal sexual act in the first degree, (2) from an order of said court, entered April 5, 2013, which denied defendant’s motion pursuant to CPL 440.30 (1-a) for the performance of forensic DNA testing on specified evidence, and (3) by permission, from an order of said court, entered April 24, 2014, which denied defendant’s motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.
Defendant was indicted in February 2011 for the crimes of rape in the first degree, criminal sexual act in the first degree and tampering with physical evidence. The charges stemmed from allegations that defendant engaged in sexual intercourse and anal sexual conduct with the victim, who was incapable of consent by virtue of being physically helpless due to alcohol consumption, and that he thereafter destroyed physical evidence related thereto. At the conclusion of the trial, defendant was found guilty of rape in the first degree and criminal sexual act in the first degree, and he was subsequently sentenced to an aggregate prison term of 20 years to be followed by 15 years of postrelease supervision. Thereafter, defendant moved, pursuant to CPL 440.30 (1-a), for the performance of forensic DNA testing on specified items of clothing, which motion County Court denied. Approximately a year later, defendant moved, pursuant to CPL 440.10, to vacate the judgment of conviction on the ground that he was denied the effective assistance of counsel, which motion the court also denied. Defendant now appeals from the judgment of conviction and *1309 the denial of his request for forensic DNA testing and, by permission, from the denial of his motion to vacate.
Contrary to defendant’s contention, the convictions are supported by legally sufficient evidence and are not against the weight of the evidence. With respect to the crime of rape in the first degree, an individual is guilty of such crime “when he or she engages in sexual intercourse with another person . . . [w]ho is incapable of consent by reason of being physically helpless” (Penal Law § 130.35 [2]; see People v Shepherd, 83 AD3d 1298, 1298 [2011], lv denied 17 NY3d 809 [2011]). With respect to the crime of criminal sexual act in the first degree, a person is guilty of such crime “when he or she engages in . . . anal sexual conduct with another person . . . [w]ho is incapable of consent by reason of being physically helpless” (Penal Law § 130.50 [2]). “ ‘Anal sexual conduct’ means conduct between persons consisting of contact between the penis and anus” (Penal Law § 130.00 [2] [b]). With respect to both offenses, a person is physically helpless if he or she is “unconscious or for any other reason is physically unable to communicate unwillingness to an act” (Penal Law § 130.00 [7]; see People v Bjork, 105 AD3d 1258, 1260 [2013], lv denied 21 NY3d 1040 [2013], cert denied 571 US -, 134 S Ct 1306 [2014]). As to defendant’s affirmative defense, where a “victim’s lack of consent is based solely upon his or her incapacity to consent because he or she was . . . physically helpless, it is an affirmative defense that the defendant, at the time he or she engaged in the conduct constituting the offense, did not know of the facts or conditions responsible for such incapacity to consent” (Penal Law § 130.10 [1]). A defendant bears the burden of establishing such defense by a preponderance of the evidence (see Penal Law § 25.00 [2]; People v Bjork, 105 AD3d at 1262).
Proof at trial established that defendant and the victim socialized with a group of common friends during a day and evening that included the consumption of alcohol. As to the issue of the victim’s helplessness during the sexual encounter that took place in the early hours of the next morning, a forensic toxicologist reviewed blood samples taken from the victim shortly after that encounter. Based on those samples, the expert opined that the victim had an estimated blood alcohol content of .266% at the time of the sexual encounter. According to the expert, that blood alcohol content would have placed a person in a “stupor” stage, marked by “a lack of consciousness, unconsciousness.” Other witnesses painted a similar picture of the victim’s capacity on the night and early morning in question. They described that, as the victim *1310 continued to consume alcohol, she began falling, stumbling and vomiting. After the victim had fallen asleep at one point, friends had difficulty waking her up. As is particularly notable, to the extent that the victim’s friends were able to rouse her, she was still unable to make coherent statements. When her friends needed to move her to different sleeping accommodations, one testified that the victim was “basically carr[ied]” to that bedroom, where she was put to bed with her clothes on. Shortly thereafter, defendant sought out the victim and engaged in sexual acts with her.
According to the victim, her last clear recollection of the night leading up to the sexual encounter was being at a bar and feeling unwell. After that, the victim remembered “corn-ting] to” in a bathroom of a home, naked and covered with blood, with “a guy . . . [she had] never seen before.” The victim described “thick blood everywhere” and feeling like her “uterus fell out of [her] body.” At this point, the man with her told her that she could not leave until she took a shower and cleaned up. According to the victim, when she saw an opportunity, she fled from the man and sought help. The registered nurse who subsequently administered the sexual assault examination upon the victim explained that the victim had damage to her vaginal and anal walls consistent with blunt force trauma. The same nurse noted that the victim had bruising on her arms and thigh. Summarizing her findings, the nurse explained that she had “seen a lot of cases,” but that she had “never seen [as] much trauma to [the vaginal and anal] areas [as she] did in [the victim’s] case.”[1] Considering the trial evidence, defendant’s convictions are supported by legally sufficient evidence (see People v Fuller, 50 AD3d 1171, 1174 [2008], lv denied 11 NY3d 788 [2008]; People v Wicks, 73 AD3d 1233, 1234 [2010], lv denied 15 NY3d 857 [2010]; People v Stasiak, 25 AD3d 1025, 1026 [2006]). Further, deferring to the jury’s decision to credit the victim and the expert evidence over defendant’s self-serving and uncorroborated testimony that the victim was coherent and willingly engaged in the intercourse, the convictions are not against the weight of the evidence (see People v Bjork, 105 AD3d at 1261-1262).
Further, although the People improperly vouched for the credibility of the victim’s testimony during summation, that misconduct did not rise to the level of depriving defendant of a fair trial (see People v Fiorino, 130 AD3d 1376, 1380 [2015], lv *1311 denied 26 NY3d 1087 [2015]; People v Green, 119 AD3d 23, 30 [2014], lv denied 23 NY3d 1062 [2014]). In addition, in light of the fact that defendant committed the crimes at issue in a particularly violent and injurious manner — facts not accounted for by the elements of those crimes — we reject defendant’s contention that his sentence, which is less than the statutory maximum, is harsh or excessive (see People v Thiel, 134 AD3d 1237, 1241 [2015]).
Likewise, defendant’s argument that County Court erred in denying his motion for postverdict DNA testing for the victim’s clothing is without merit. Defendant contends that such testing could prove that the victim had sexual intercourse with someone other than defendant hours prior to his sexual intercourse with her, and that if this unknown party caused the injuries to the victim then it would have “reduced or even eliminated” defendant’s culpability. However, proof that would have supported defendant’s speculation[2] in this regard would not have shown the victim to be any less physically helpless during the sexual encounter. Accordingly, the presence of DNA from an unknown third person on the victim’s clothing would not create a reasonable probability of a verdict more favorable to defendant and, therefore, County Court properly denied defendant’s motion for DNA testing (see People v Brown, 36 AD3d 961, 962 [2007], lv denied 8 NY3d 920 [2007]; People v De Oliveira, 223 AD2d 766, 768 [1996], lv denied 88 NY2d 1020 [1996]; see also People v Dearstyne, 305 AD2d 850, 853 [2003], lv denied 100 NY2d 593 [2003]).
In addition, we discern nothing in the trial record sufficient to support defendant’s contention on his direct appeal from the judgment of conviction that he received ineffective assistance of counsel. “[I]t is incumbent on [a] defendant to demonstrate the absence of strategic or other legitimate explanations for counsel’s [alleged shortcomings]” (People v Rivera, 71 NY2d 705, 709 [1988]; see People v Thiel, 134 AD3d at 1240). Defendant’s contention that counsel should have obtained experts who would have provided exculpatory evidence fails to exclude the objectively legitimate possibility that experts did not exist who would have provided testimony that was more exculpatory than inculpatory. Likewise, defendant failed to demonstrate the absence of a legitimate strategy for counsel’s decision not to seek suppression of the recorded law enforcement interview with defendant; having reviewed the video, in which defendant *1312 repeatedly professed his innocence and gave a narrative for the events in question largely consistent with what he eventually testified to at trial, we cannot say that defendant established that it was objectively unreasonable for counsel to have watched the video and concluded that it was more favorable than unfavorable to defendant.
However, we find that County Court erred in denying, without a hearing, defendant’s motion to vacate the judgment pursuant to CPL 440.10 based upon his claims of ineffective assistance of counsel (see CPL 440.10 [1] [h]). To establish entitlement to a hearing, a defendant must demonstrate that “non-record facts set forth in [a] CPL article 440 motion . . . are material and [that], if established, they would entitle him [or her] to relief” (People v Mosley, 121 AD3d 1169, 1174 [2014], lv denied 24 NY3d 1086 [2014]; see CPL 440.30 [5]; People v Satterfield, 66 NY2d 796, 799 [1985]). Defendant’s most significant sworn allegation is that counsel failed to watch the entire recording of his interview with law enforcement — or to read the entire transcript of that interview — prior to waiving any challenge to its admissibility and making assurances to the jury during opening remarks as to the contents of that recording. Notably, defendant’s father also submitted a sworn statement suggesting that counsel may not have been familiar with the contents of the recorded police interview. Further, defendant made factual allegations concerning the circumstances surrounding that interview that would, if credited, support a finding that it was, at least in part, a custodial interrogation, which is relevant because a strategic decision whether to seek suppression would have required being sufficiently familiar with the contents of that recording (see generally People v Rivera, 71 NY2d at 709). Defendant also alleged a number of specific deficiencies in counsel’s assistance during the plea bargaining and trial stages which, if credited, may entitle him to relief (see People v Beckingham, 116 AD3d 1298, 1301 [2014]), including that counsel failed to timely convey a plea offer (see generally People v Fernandez, 5 NY3d 813, 814 [2005]). Defendant further avers that counsel made unqualified assurances regarding a favorable outcome if he went to trial and made specific assurances concerning the sentence that would be imposed if he were convicted after trial. In regard to counsel’s pretrial actions, defendant averred that, but for counsel’s false assurances and inadequate representation, he would have accepted a plea deal. Taken as a whole, we find that defendant provided sufficient sworn, material statements in support of his motion that, if credited, would establish that *1313 he received less than meaningful representation (see People v Rapp, 133 AD3d 979, 980 [2015]; People v Mosley, 121 AD3d at 1174). Accordingly, we reverse the order denying his postverdict CPL article 440 motion and remit to County Court to hold a hearing on defendant’s ineffective assistance of counsel claim (see People v Zeh, 22 NY3d 1144, 1146 [2014]; People v Jenkins, 68 NY2d 896, 898 [1986]; People v Mosley, 121 AD3d at 1174).
Garry, Egan Jr., Devine and Aarons, JJ., concur.
Ordered that the judgment rendered June 6, 2012 and the order entered April 5, 2013 are affirmed. Ordered that the order entered April 24, 2014 is reversed, on the law, and matter remitted to the County Court of Albany County for further proceedings not inconsistent with this Court’s decision.

. During a recorded interview, in which defendant generally described having consensual sex with the victim, he nonetheless described what he had done to her as “jackhammering away.”

. Defendant makes this contention based upon the People’s pretrial disclosure of interviews with persons who conveyed that they had heard rumors of a previous sexual encounter.