[64 NYS3d 714]

The People of the State of New York, Respondent, v Daniel P. Taylor, Appellant.

Third Department, November 2, 2017

APPEARANCES OF COUNSEL

*Andrea G. Hirsch*, New York City, for appellant.

*Stuart M. Cohen, Special Prosecutor*, Rensselaer, for respondent.

### OPINION OF THE COURT

PETERS, P.J.

Appeal, by permission, from an order of the County Court of Saratoga County (Sypniewski, J.), entered July 14, 2016, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment convicting him of the crimes of assault in the second degree and criminal possession of a weapon in the fourth degree, without a hearing.

In 2013, defendant was convicted of assault in the second degree and criminal possession of a weapon in the fourth degree as a result of an altercation outside of a concert venue in the Town of Clifton Park, Saratoga County, during which Joseph Fritz (hereinafter the victim) suffered a 16-inch-wide laceration across his abdomen. The People's case rested primarily on the testimony of a cabdriver who claimed to have witnessed the incident from his parked minivan, as the victim remembered very little about the event. During his trial testimony, the cabdriver explained that he observed the victim and defendant's girlfriend having a heated conversation in a nearby parking lot, after which defendant pushed the victim to the ground, crouched over him for a period of time and then ran away. Defendant, who testified on his own behalf, provided a contrary version of the events that transpired. He stated that, while outside of the concert venue, the victim began call-

ing him names, shoved him and asked if he wanted to fight. When he walked away, the victim jumped on his back and knocked him to the ground. Fearful that he would be unable to defend himself and permanently injured because he suffered from a shoulder that regularly dislocated, rendering his arm unusable, defendant explained that he pushed the victim off his back with his left arm, opened his pocket knife with his right hand and spun around to show the victim the knife in an effort to discourage the attack. At the same moment, defendant claimed, the victim lunged at him. Defendant testified that he did not stab or thrust the knife, but only meant to scare the victim away.

Upon appeal, this Court affirmed defendant's conviction (118 AD3d 1044 [2014], *lv denied* 23 NY3d 1043 [2014]). In October 2015, defendant moved pursuant to CPL 440.10 to vacate his judgment of conviction on the ground that he was denied the effective assistance of counsel. His motion set forth four failings by his trial attorneys as the basis for his ineffective assistance claim—namely, that counsel failed to (1) use impeachment evidence against the cabdriver, (2) request that a certain lesser included offense be submitted to the jury, (3) object to County Court's allegedly coercive *Allen* charge and (4) sufficiently articulate and support a request for an instruction on the defense of justification under Penal Law § 35.05. County Court summarily denied the motion without a hearing, finding that all of the allegations of ineffective assistance raised by defendant were procedurally barred by CPL 440.10 because they could have been, but were not, raised on his direct appeal from the judgment. Defendant now appeals.

CPL 440.10 (2) (c) provides that a motion to vacate a judgment must be denied where,

> "[a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's . . . unjustifiable failure to raise such ground or issue upon an appeal actually perfected."

As we have articulated, "the purpose of a CPL article 440 motion is to inform a court of facts not reflected in the record and unknown at the time of the judgment and cannot be used as a vehicle for an additional appeal" (*People v Bruno*, 97 AD3d 986,

986-987 [2012] [internal quotation marks, brackets, ellipses and citations omitted], *lv denied* 20 NY3d 931 [2012]; *see People v Cooks*, 67 NY2d 100, 103-104 [1986]). That said, a claim of ineffective assistance of counsel is not generally demonstrable on the trial record and "in the typical case it would be better, and in some cases essential, that an appellate attack on the effectiveness of counsel be bottomed on an evidentiary exploration by collateral or post-conviction proceeding brought under CPL 440.10" (*People v Brown*, 45 NY2d 852, 853-854 [1978]; *accord People v Henderson*, 28 NY3d 63, 66 [2016]).

■ Contrary to County Court's conclusion, we do not find that all of the alleged failures on the part of trial counsel involve matters adequately reflected in the record that could have been raised upon direct appeal. Defendant's argument that trial counsel was ineffective for failing to impeach the cabdriver "is dependent upon [a] statement[ ] to the police that [is] outside the record" and, therefore, was properly raised in the context of the instant CPL 440.10 motion (*People v Thomas*, 105 AD3d 1068, 1071 [2013], *lv denied* 21 NY3d 1010 [2013]; *see People v Rosado*, 13 AD3d 902, 903 [2004], *lv denied* 4 NY3d 835 [2005]). Defendant also faults trial counsel for failing to request that the crime of assault in the third degree (*see* Penal Law § 120.00 [3]) be submitted to the jury as a lesser included offense of assault in the second degree (*see* Penal Law § 120.05 [2]). While it is apparent from the face of the record that counsel did not request submission of assault in the third degree as a lesser included offense, it is axiomatic that "the decision to request or consent to the submission of a lesser included offense is often based on strategic considerations, taking into account a myriad of factors, including the strength of the People's case" (*People v McGee*, 20 NY3d 513, 519 [2013]; *see People v Baker*, 14 NY3d 266, 272-273 [2010]; *People v Lane*, 60 NY2d 748, 750 [1983]; *People v Calderon*, 66 AD3d 314, 320 [2009], *lv denied* 13 NY3d 858 [2009]). Because defendant's complaint about counsel in this regard is predicated on counsel's strategy, or lack thereof, which is not discernable from the face of the record, we likewise find that this claim of ineffectiveness may properly be advanced by way of a CPL 440.10 motion (*see People v Peque*, 22 NY3d 168, 202 [2013], *cert denied* 574 US —, 135 S Ct 90 [2014]; *People v Calderon*, 66 AD3d at 322 n 4).

The two other allegations of ineffectiveness raised on the motion—that counsel failed to object to County Court's *Allen*

charge and failed to sufficiently articulate and support a request for an instruction on the defense of justification under Penal Law § 35.05—are, as defendant concedes, based on matters that appear on the face of the record. Yet, relying on *People v Maxwell* (89 AD3d 1108 [2d Dept 2011]), defendant claims that these record-based allegations of ineffectiveness may appropriately be considered together with his nonrecord-based allegations in the context of this CPL 440.10 motion, thereby permitting review of his claim of ineffective assistance in its entirety. For the reasons that follow, we agree.

As noted, CPL 440.10 directs that a motion to vacate a judgment of conviction must be denied when the trial record contains sufficient facts that would have allowed for "adequate review of the *ground or issue* raised . . . , [but] no such appellate review or determination occurred owing to the defendant's . . . unjustifiable failure to raise *such ground or issue* upon an appeal actually perfected" (CPL 440.10 [2] [c] [emphasis added]). With regard to a claim of ineffective assistance of counsel, we agree with the Second Department's reasoning in *People v Maxwell* (*supra*) that each alleged shortcoming or failure by defense counsel should not be viewed as a separate "ground or issue raised upon the motion" (CPL 440.10 [2] [b]). Rather, a "defendant's claim of ineffective assistance of counsel constitutes a single ground or issue upon which relief is requested" (*People v Maxwell*, 89 AD3d at 1109; *see People v Freeman*, 93 AD3d 805, 806 [2012], *lv denied* 19 NY3d 960 [2012]).

Under this state's firmly established jurisprudence, "[t]he core . . . inquiry in reviewing ineffective assistance of counsel claims is whether counsel's performance *'viewed in totality'* amounts to 'meaningful representation' " (*People v Cummings*, 16 NY3d 784, 785 [2011] [emphasis added], *cert denied* 565 US 862 [2011], quoting *People v Baldi*, 54 NY2d 137, 147 [1981]). Indeed, "the claim of ineffectiveness is ultimately concerned with the fairness of the process as a whole" (*People v Benevento*, 91 NY2d 708, 714 [1998]; *accord People v Oathout*, 21 NY3d 127, 132 [2013]). Thus, in assessing a claim of ineffective assistance, "[t]he task of a reviewing court is to 'consider the seriousness of the [alleged] errors *in their totality*' " (*People v Wright*, 25 NY3d 769, 779 [2015] [emphasis added and brackets omitted], quoting *People v Oathout*, 21 NY3d at 132; *see People v Arnold*, 85 AD3d 1330, 1334 [2011]).

Here, defendant's claim of ineffective assistance of counsel is grounded upon matters appearing both on the record

and outside the record, and therefore constitutes, as the Court of Appeals has termed it, a "mixed claim[ ]" of ineffective assistance (*People v Evans*, 16 NY3d 571, 575 n 2 [2011], *cert denied* 565 US 912 [2011]; *see generally Massaro v United States*, 538 US 500 [2003]). Because such a claim constitutes a single, unified claim that must be assessed in totality and is dependent, in part, on matters outside the record, it cannot be said that "sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion" (CPL 440.10 [2] [c]). Such a reading of the statute ensures a criminal defendant's right to have his or her allegations of ineffective assistance evaluated "in totality" (*People v Baldi*, 54 NY2d 137, 147 [1981]; *accord People v Benevento*, 91 NY2d at 712), and is thus necessary to "give a defendant a fair opportunity to vindicate his [or her] rights" (*People v Cuadrado*, 9 NY3d 362, 365 [2007]). We therefore hold that "such a mixed claim, presented in a CPL 440.10 motion, is not procedurally barred, and the CPL 440.10 proceeding is the appropriate forum for reviewing the claim of ineffectiveness in its entirety" (*People v Maxwell*, 89 AD3d at 1109; *see People v Moore*, 141 AD3d 604, 605 [2016]; *People v Mentor*, 116 AD3d 793, 793 [2014]; *People v Lou*, 95 AD3d 1035, 1036 [2012], *lv denied* 19 NY3d 1027 [2012]; *People v Isaacs*, 94 AD3d 1017, 1018-1019 [2012], *lv denied* 19 NY3d 997 [2012]; *see generally People v Brown*, 45 NY2d at 853-854). To the extent that our prior decisions have held to the contrary (*see e.g. People v Stevens*, 95 AD3d 1451, 1452 [2012], *lv denied* 19 NY3d 1029 [2012]; *People v Polanco*, 52 AD3d 947, 947 [2008], *lv denied* 11 NY3d 793 [2008]; *People v Hickey*, 277 AD2d 511, 511 [2000], *lv denied* 95 NY2d 964 [2000]), they should no longer be followed.

█ With defendant's record-based and nonrecord-based allegations of ineffectiveness properly before us, we find that "defendant was deprived of a fair trial by less than meaningful representation" (*People v Oathout*, 21 NY3d at 132; *accord People v Flores*, 84 NY2d 184, 187 [1994]). To prevail on his ineffective assistance of counsel claim, defendant was required to " 'demonstrate the absence of strategic or other legitimate explanations' for counsel's alleged shortcomings" (*People v Wright*, 25 NY3d at 779, quoting *People v Benevento*, 91 NY2d at 712; *accord People v Honghirun*, 29 NY3d 284, 289 [2017]). While "a reviewing court must avoid confusing 'true ineffective-

ness with mere losing tactics' " (*People v Benevento*, 91 NY2d at 712, quoting *People v Baldi*, 54 NY2d at 146; *accord People v Cassala*, 130 AD3d 1252, 1253-1254 [2015], *lv denied* 27 NY3d 994 [2016]), we conclude that defendant has satisfied the requisite standard here.

The People's chief witness at trial was the cabdriver who purportedly observed the incident from his parked minivan. While the record plainly reveals that defense counsel's primary trial tactic was to attack the credibility of the cabdriver, he made no attempt to cross-examine this witness about the statements he had made in his supporting deposition to police, which were significantly at odds with his trial testimony. In his supporting deposition, made just hours after the incident, the cabdriver essentially indicated a failure to observe the assault; he stated that he observed defendant and the victim "start[ ] to fight at the far end of the parking lot and [then] they disappeared behind [a] white FedEx van." Yet, during his trial testimony, the cabdriver claimed to have seen defendant push the victim to the ground, crouch over him for $1\frac{1}{2}$ to 2 minutes and then run away. Under the facts and circumstances of this case, we can perceive no strategic or legitimate tactical explanation for defense counsel's failure to impeach the cabdriver with his prior inconsistent statement. As the People's case rested almost entirely upon the testimony of the cabdriver, counsel's efforts to undermine his credibility were of paramount importance (*see People v Arnold*, 85 AD3d 1330, 1333-1334 [2011]; *People v Cantave*, 83 AD3d 857, 858-859 [2011], *lv denied* 17 NY3d 857 [2011]; *People v Clarke*, 66 AD3d 694, 698 [2009]). If properly utilized, the prior inconsistent statement may have cast doubt on the cabdriver's testimony that defendant was the initial aggressor (*see* Penal Law § 35.15 [1] [b]; [2]; *see generally People v Watson*, 20 NY3d 1018, 1019-1020 [2013] [explaining that the defense of justification is generally not available to a defendant who is found to be the initial aggressor]; *People v Petty*, 7 NY3d 277, 285 [2006] [same]). Indeed, the significant discrepancies between the cabdriver's supporting deposition and trial testimony may also have undermined his entire account of the incident. "[B]y failing to impeach the [cabdriver] with h[is] inconsistent statements, counsel also wasted an invaluable opportunity to highlight those inconsistencies to the jury during his summation" (*People v Arnold*, 85 AD3d at 1334).

The import of counsel's failure in this regard—and the lack of any strategic or legitimate explanation for it—is magnified

by defense counsel's belated, repeated and unsuccessful attempts to place the cabdriver's supporting deposition before the jury. Defense counsel first attempted to elicit the contents of the statement during his examination of the state trooper who took it from the cabdriver, explaining that he intended to show the "obvious inconsistency" between the cabdriver's testimony and his statement. Stymied, defense counsel subsequently attempted to call the trooper as his own witness for the purpose of introducing the cabdriver's statement into evidence as a "contradictory statement" as to what the cabdriver saw. Once again, defense counsel's attempt to do so was met with an objection by the People, which was sustained by County Court. Finally, during deliberations, the jury requested to hear the statement that the cabdriver made to the trooper, to which County Court responded that the statement was not in evidence. Outside of the jury's presence, defense counsel then sought to reopen the proof for the purpose of admitting the cabdriver's statement so that the jury could "see the inconsistencies between [it] and his live testimony," referring to the statement as a "critical" piece of evidence.[1] For essentially the same reasons that it rebuffed defense counsel's previous attempts to get the content of the statement in evidence, County Court denied the application.

Further calling into question the adequacy of the representation afforded to defendant was counsel's failure to clearly articulate and support his request for a justification defense charge under Penal Law § 35.05. During the charge conference, defense counsel stated that he was requesting a justification charge under both Penal Law § 35.05—often referred to as the "choice of evils" or necessity defense[2] and Penal Law § 35.15—which governs the use of ordinary and deadly physical force under certain circumstances. Yet, in the next breath, counsel

---

**1.** Defense counsel's explanation to County Court that the importance of the statement came to light only after the victim took the stand and stated that he remembered very little about what had happened in the parking lot is belied by the record.

**2.** Under Penal Law § 35.05 (2), conduct that would otherwise constitute an offense is justified when it is

"necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no fault of the actor, and which is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding such injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense

muddied his request for a Penal Law § 35.05 instruction by referring to it as "the justification charge for ordinary force"—which, as noted, pertains to the justification defense embodied in Penal Law § 35.15 (1). Counsel then proceeded to articulate the factual basis for his request in that regard, stating that the "ordinary force" in this case was established through defendant's testimony that he took out his knife merely to scare the victim into retreating, and argued that such conduct on the part of defendant "is covered by [Penal Law § ] 35.05, use of *ordinary force* under the circumstances perceived by [defendant] at that moment" (emphasis added). Counsel then went on to recite the evidence supporting "the second [requested] charge, use of deadly force." Counsel summarized that defendant was entitled to "two types of charge[s] . . . [o]ne, ordinary force, if [the jury] think[s] he made no offensive move or no affirmative move towards [the victim]; or if he did, that he was justified because of his fear of protracted disfigurement, protracted impairment of health, protracted loss or impairment of the function of any bodily organ, specifically his shoulder dislocating . . . [or] being permanently injured." Thus, by repeatedly referring to his first request as one for a charge on "ordinary force," counsel conveyed the impression that the defense was seeking a justification charge under both subdivision (1) and subdivision (2) of Penal Law § 35.15.

Compounding the error, when asked by County Court to provide a case in which both of the requested charges were given, counsel inexplicably directed the court's attention to a case that discussed only the defense of justification under subdivisions (1) and (2) of Penal Law § 35.15—and which made no reference whatsoever to Penal Law § 35.05 (2)—while steadfastly maintaining that the "ordinary force and deadly physical force" justification defenses "are not incompatible" and can be charged in a single case. As a product of the confusion caused by defense counsel, the People likewise proffered a case addressing the circumstances under which both Penal Law § 35.15 (1) and (2) may be charged, and which supported its position that the submission of both such charges was not warranted under the circumstances of this case. Not surprisingly, County Court too understood defense counsel's request to be for a justification charge under both subdivision (1) and subdivision (2) of Penal Law § 35.15, and ultimately ruled that de-

---

in issue" (*see People v Maher*, 79 NY2d 978, 981 [1992]; *People v Craig*, 78 NY2d 616, 619 n 1 [1991]).

fendant was only entitled to a justification charge under Penal Law § 35.15 (2) based on deadly physical force.

To be sure, there can be no serious dispute that defendant was entitled to a justification charge under Penal Law § 35.05. Defendant testified that he had been knocked to the ground from behind by the victim through no fault of his own and, with the victim on his back and fearing that he would be unable to defend himself and be permanently injured, he wielded the knife in an effort to frighten the victim and discourage the attack. Thus, considered in the light most favorable to defendant (*see People v Petty*, 7 NY3d at 284; *People v Watts*, 57 NY2d 299, 301 [1982]), there is a reasonable view of the evidence that would allow a jury to conclude that defendant's actions were justified (*see People v Cataldo*, 260 AD2d 662, 664 [1999], *lv denied* 93 NY2d 968 [1999]; *see also People v Padgett*, 60 NY2d 142, 144-145 [1983]; *People v Green*, 98 AD2d 908, 909 [1983]; *People v Huntley*, 87 AD2d 488, 493-494 [1982], *affd* 59 NY2d 868 [1983]). Notably, when warranted by the evidence, a defense of justification under both Penal Law §§ 35.05 (2) and 35.15 (2) may properly be charged to the jury (*see People v Harden*, 134 AD3d 1160, 1163-1164 [2015], *lv denied* 27 NY3d 1133 [2016]; *People v Cataldo*, 260 AD2d at 664). Accordingly, had counsel cogently presented his request for a justification defense under Penal Law § 35.05, County Court would have been required to so instruct the jury, and the court's failure to do so would have constituted reversible error (*see People v Maher*, 79 NY2d 978, 979 [1992]; *People v Padgett*, 60 NY2d at 145; *People v Watts*, 57 NY2d at 301).

While counsel's errors in this regard,[3] individually, may not necessarily rise to the level of ineffective assistance, we find

---

3. The concurrence/dissent concedes that trial counsel's failure to adequately articulate and support a request for a Penal Law § 35.05 justification defense is fully documented by the trial transcript and needs no further record development, but finds that the allegation concerning counsel's failure to impeach the cabdriver with his prior inconsistent statement has not been established on the present record and, thus, a hearing is necessary on the motion. Yet, the concurrence/dissent fails to explain what further record development is required to demonstrate that counsel's omission in that regard was deficient. Unlike trial counsel's failure to request a lesser included offense—an issue we need not reach but which, arguably, could have been the product of a strategic decision on the part of counsel—the record plainly and unequivocally discloses that the failure to impeach the cabdriver with his prior inconsistent statement was not a matter of strategy but, rather, was an oversight on the part of counsel. Indeed, as previously explained at length (*see, supra* at 93-94), the lack of any strategic basis for this failure is confirmed by counsel's subsequent repeated and unsuccessful attempts to get the

that " 'the cumulative effect of defense counsel's actions deprived defendant of meaningful representation' " (*People v Oathout*, 21 NY3d at 132 [brackets omitted], quoting *People v Arnold*, 85 AD3d at 1334; *see People v Wright*, 25 NY3d at 779; *People v Bush*, 107 AD3d 1302, 1303 [2013]; *People v Cantave*, 83 AD3d at 859; *People v Chapman*, 54 AD3d 507, 511 [2008]). "This is especially so where, as here, the determination of guilt . . . hinged on sharp issues of credibility" (*People v Clarke*, 66 AD3d at 698; *accord People v Cassala*, 130 AD3d at 1257). Accordingly, defendant is entitled to a new trial.

EGAN JR., J. (concurring in part and dissenting in part). We concur with the majority's holding that, in assessing a claim of ineffective assistance of counsel, the reviewing court should consider the seriousness of the alleged errors committed by trial counsel in their entirety (*see People v Wright*, 25 NY3d 769, 779 [2015]; *People v Benevento*, 91 NY2d 708, 712 [1998]; *People v Baldi*, 54 NY2d 137, 147 [1981]), and that where, as here, the claim is based upon facts appearing both on the record and outside the record—i.e., a "mixed claim[ ]" of ineffective assistance (*People v Evans*, 16 NY3d 571, 575 n 2 [2011], *cert denied* 565 US 912 [2011])—a CPL 440.10 motion is the appropriate avenue for reviewing the entirety of the claim and is not otherwise procedurally foreclosed (*see People v Maxwell*, 89 AD3d 1108, 1109 [2011]). With respect to the relief being granted in this specific case—i.e., reversal of the order and granting the motion to vacate the judgment of conviction—we find it premature and therefore dissent in part.

Under our holding, it is certainly appropriate that we analyze both nonrecord-based claims of attorney error now raised on the motion and record-based evidence of attorney error that were raised, or capable of being raised, on the appeal from the judgment of conviction, and consider whether those claims have merit and combine in the collective to constitute ineffective assistance of counsel. We do not disagree that defendant has alleged a series of specific deficiencies with respect to the effectiveness of his trial counsel which, if established, in toto, may entitle defendant to the relief being sought (*see People v Mosley*, 121 AD3d 1169, 1173-1174 [2014], *lv denied* 24 NY3d

contents of the statement into evidence as well as his own on-the-record statements while attempting to do so. Thus, the only real issue subject to debate is whether these two demonstrated deficiencies were of such magnitude that, collectively, they served to deprive defendant of meaningful representation.

1086 [2014]). The lack of objection to County Court's allegedly coercive *Allen* charge and sufficiency of the request by defendant's counsel for a justification charge pursuant to Penal Law § 35.05 were fully documented in the trial record.[1] In our opinion, however, inasmuch as the claims regarding the failure of defendant's counsel to impeach the cabdriver with a prior statement arguably inconsistent with his trial testimony and request a lesser included charge have not been affirmatively conceded by the People nor supported by "unquestionable documentary proof" (CPL 440.30 [3] [c]; *see generally People v Baxley*, 84 NY2d 208, 214 [1994]), they have not been conclusively established at this juncture, and we cannot therefore conclude that either constitutes attorney error.[2] Instead of reversing the order and vacating the judgment of conviction, we would reverse the order and remit the matter for an evidentiary hearing at which defendant's counsel would be allowed to explain his action or inaction and permit County Court to determine the merits of defendant's claim (*see* CPL 440.30 [5]; *People v Mosley*, 121 AD3d at 1174; *see also People v Sposito*, 140 AD3d 1308, 1312 [2016], *lv granted* 28 NY3d 1075 [2016]; *People v Hoyte*, 273 AD2d 48, 48-49 [2000]).

MULVEY and PRITZKER, JJ., concur with PETERS, P.J.; EGAN JR., J., concurs in part and dissents in part in a separate opinion in which DEVINE, J., concurs.

Ordered that the order is reversed, on the law, motion granted and matter remitted to the County Court of Saratoga County for a new trial.

---

1. Therefore, these claims of error were capable of being raised on the direct appeal from the judgment of conviction.

2. The judge who denied the CPL 440.10 motion without a hearing did not preside over the trial.