[989 NE2d 936, 967 NYS2d 654]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHRIS-
TOPHER OATHOUT, Appellant.

Argued March 21, 2013; decided May 2, 2013

**POINTS OF COUNSEL**

*Cheryl Coleman Law Offices*, Albany (*Cheryl Coleman* of counsel), for appellant. Trial counsel provided ineffective assistance to defendant. (*People v Turner*, 5 NY3d 476; *Strickland v Washington*, 466 US 668; *People v Benevento*, 91 NY2d 708; *People v Fisher*, 18 NY3d 964; *People v Brown*, 17 NY3d 742; *People v Ashwal*, 39 NY2d 105; *People v Baldi*, 54 NY2d 137.)

*P. David Soares, District Attorney*, Albany (*Steven M. Sharp* of counsel), for respondent. Defendant received effective assistance of counsel. (*People v Benevento*, 91 NY2d 708; *People v Felder*, 47 NY2d 287; *People v Claudio*, 83 NY2d 76; *Strickland v Washington*, 466 US 668; *People v Hobot*, 84 NY2d 1021; *People v Baldi*, 54 NY2d 137; *People v Henry*, 95 NY2d 563; *People v Flores*, 84 NY2d 184; *People v Aiken*, 45 NY2d 394; *People v Rivera*, 71 NY2d 705.)

**OPINION OF THE COURT**

PIGOTT, J.

In *People v Rivera* (71 NY2d 705, 708 [1988]), this Court held that what constitutes effective assistance of counsel varies according to the particular circumstances of each case. "So long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation, the constitutional requirement will have been met" (*id.* at 708, quoting *People v Baldi*, 54 NY2d 137, 146-147 [1981]). Counsel's performance must be evaluated to determine whether the tactics and strategies were consistent with those of a "reasonably competent attorney" (*People v Angelakos*, 70 NY2d 670, 674 [1987], quoting *People v Satterfield*, 66 NY2d 796, 799 [1985]). The test is "reasonable competence, not perfect representation" (*People v Modica*, 64 NY2d 828, 829 [1985] [internal quotation marks omitted]). However, that test cannot be so weak as to

deny a defendant adequate due process. Here, we find defense counsel's failures so significant that his representation viewed in its totality was not meaningful.

Defendant was convicted after a jury trial of one count of murder in the second degree (Penal Law § 125.25 [1]). According to the People's theory of the case, defendant, a drug addict, and Oswaida Lugo, also a drug addict and prostitute, went to the apartment of Robert Taylor to engage in sexual acts for money. At some point, defendant and Taylor began to argue over payment. Defendant grabbed Taylor by the neck and when Taylor retreated to the couch, defendant stabbed him with a knife several times, killing him.

Defendant, who was indigent, was originally assigned counsel at his arraignment but later was represented at pretrial proceedings and trial by an attorney who took the case pro bono, apparently at the request of a relative of defendant. A lawyer who specialized in civil matters, counsel had little experience in criminal law.

During pretrial proceedings, defense counsel demonstrated a lack of basic knowledge of criminal procedure; for example, he filed a premature application for defendant's release from custody, unaware that the 45-day mandate set forth in Criminal Procedure Law § 190.80 runs from the time defendant is held for grand jury action rather than from the time of arraignment. He then filed a notice of appeal following the preliminary hearing determination.

Based on counsel's early pretrial performance, defendant sent a letter to the court, subsequently withdrawn, stating that he no longer had confidence in his lawyer and asking that defense counsel be removed from his case* and that his original attorney be reassigned. Defendant noted, among other things, that he had not seen his lawyer since "the day of my . . . arraignment," some two months earlier.

Counsel's performance also compelled the prosecutor, to his great credit, to bring a motion questioning defense counsel's effectiveness. In his motion, the prosecutor chronicled counsel's lack of knowledge of the rules of criminal evidence pertaining to, among other things, impeachment of witnesses and laying a proper foundation for the admission of evidence. The prosecutor sought an inquiry by the court as to defense counsel's ability or,

---

* Defendant apparently was unaware that since his lawyer was privately retained he could be terminated at any time by defendant.

alternatively, the appointment of standby counsel. Defense counsel responded to the motion asserting, among other things, that he received high marks in law school in criminal law, but, at the same time, joined in the People's request for standby counsel. Unfortunately, County Court took little action on the motions. It made a brief inquiry on the record as to whether defendant wished for defense counsel to continue representing him. Defendant stated, through defense counsel, that he did. The court failed to address the need for standby counsel.

Immediately following this brief inquiry, County Court went forward with scheduled pretrial hearings. Defense counsel's shortcomings at that point became more obvious. For instance, while describing his own motions as "pro forma," he agreed to waive a *Wade* hearing, doing so simply on the People's assertion that all of the single-photo, police-arranged identifications were "confirmatory," and conceded during the *Huntley* hearing that defendant was not in custody during police questioning. At the *Sandoval* hearing, defense counsel agreed to the People's use of a prior conviction only to have County Court intervene to preclude its use. Overall, defense counsel's performance and responses at the pretrial hearings demonstrated a complete lack of familiarity with the specific motions and relevant legal criteria.

His performance at trial was similarly inadequate, much as the People had forewarned in their motion to County Court. Among defense counsel's most notable errors at trial was his repeated failure to object to uncharged crime evidence. At trial, the People introduced evidence of defendant's prior use of crack cocaine and prostitution through multiple witnesses. The prosecution's main witness, Oswaida Lugo, testified that defendant was routinely "a gay prostitute for old men," such as the victim, in order to support his cocaine addiction. The People took this one step further by introducing evidence, through a witness similar in age to the victim, that defendant had sex with that witness for money. All of this evidence should have been the subject of a pretrial ruling under *Molineux*, yet none was objected to by defense counsel. This failure to object throughout the trial had no discernable strategic basis.

During the People's case-in-chief, the prosecutor offered defendant's grand jury testimony, defense counsel having previously permitted defendant to appear before the grand jury. Apparently unaware that defendant's grand jury testimony could

be used by the People at trial, defense counsel objected, claiming surprise. Midway through the trial, defense counsel raised questions with respect to certain physical evidence, admitting to the court that he was examining this evidence for the very first time.

Counsel's failures continued into the prosecutor's summation. He failed to object to the prosecutor's vouching for Lugo's credibility when the prosecutor told the jury that the police would not keep using her as a confidential informant if she were not credible. He also failed to object when the prosecutor pointed out to the jury that defendant, who did not testify at trial, took notes with his left hand during the trial and continued to theorize how the crime was consistent with its commission by a left-handed person—like defendant. Defense counsel failed to object despite the fact that there was no evidence presented either that defendant was left-handed or that the crime was committed by a left-handed person.

Following the close of proof, counsel was unprepared for the charge conference. He neglected to prepare proposed jury instructions as directed by the court, then dissembled, claiming to have reviewed a "missing photograph" charge, only to be advised by the court that no such charge existed. He further failed to request any lesser included offense charge.

Following the guilty verdict, defendant's family retained a new attorney for his appeal. Defendant's appellate counsel prepared a motion pursuant to CPL 330.30 to set aside the verdict, centering around trial counsel's ineffectiveness. County Court summarily denied that motion without a hearing at sentencing.

Defendant then appealed County Court's judgment of conviction to the Appellate Division, arguing, among other things, that he was denied meaningful representation at trial. The Appellate Division affirmed the conviction, finding that, although "counsel's representation of defendant may, at times, have been unorthodox, it was not, when the record is viewed as a whole, ineffective" (90 AD3d 1418, 1421 [3d Dept 2011]). We disagree.

In order to sustain a claim of ineffective assistance of counsel, a court must consider whether defense counsel's actions at trial constituted " 'egregious and prejudicial' error such that defendant did not receive a fair trial" (*People v Benevento*, 91 NY2d 708, 714 [1998], quoting *People v Flores*, 84 NY2d 184, 188-189 [1994]). While a single error by defense counsel at trial generally does not constitute ineffective assistance (*cf. People v*

*Turner*, 5 NY3d 476 [2005]), courts must examine defense counsel's entire representation of defendant (*see Flores*, 84 NY2d at 188). "[T]he claim of ineffectiveness is ultimately concerned with the fairness of the process as a whole" (*Benevento*, 91 NY2d at 713). "Defense counsel are charged with managing the day-to-day conduct of defendant's case and making strategic and tactical decisions" (*People v Henriquez*, 3 NY3d 210, 225 [2004]). Counsel's performance in fulfilling this role is "objectively evaluated" (*People v Angelakos*, 70 NY2d 670, 673 [1987]) "to determine whether it was consistent with strategic decisions of a 'reasonably competent attorney' " (*Benevento*, 91 NY2d at 712 [citations omitted]).

While defense counsel's errors in this case individually may not constitute ineffective assistance, "the cumulative effect of [defense] counsel's actions deprived defendant of meaningful representation" (*People v Arnold*, 85 AD3d 1330, 1334 [3d Dept 2011]). Defense counsel's actions throughout this case showed an unfamiliarity with or disregard for basic criminal procedural and evidentiary law. At the very least, a defendant is entitled to representation by counsel that has such basic knowledge, particularly so, when that defendant is facing a major felony with significant liberty implications. Considering the seriousness of the errors in their totality, we conclude that defendant was deprived of a fair trial by less than meaningful representation.

Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.

Chief Judge LIPPMAN and Judges GRAFFEO, READ and RIVERA concur with Judge PIGOTT; Judge SMITH dissents and votes to affirm, concluding that defendant received effective assistance of counsel for the reasons stated in the memorandum at the Appellate Division (90 AD3d 1418).

Order reversed and a new trial ordered.