[999 NE2d 1137, 977 NYS2d 692]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN G. GLYNN, Appellant.

Argued September 9, 2013; decided October 17, 2013

**POINTS OF COUNSEL**

*Sugarman Law Firm, LLP*, Syracuse (*Paul V. Mullin* and *Jenna W. Klucsik* of counsel), for appellant. I. Judge Hafner's

refusal to disqualify himself denied John M. Glynn of his right to a fair trial. (*Matter of Murphy*, 82 NY2d 491; *People v Warren*, 100 AD3d 1399; *People v Moreno*, 70 NY2d 403; *People v Horton*, 18 NY2d 355; *People v Casey*, 61 AD3d 1011; *People v Lerario*, 43 AD3d 492; *People v Jones*, 143 AD2d 465; *People v Tartaglia*, 35 NY2d 918; *People v Curkendall*, 12 AD3d 710; *People v Corelli*, 41 AD2d 939.) II. Mr. Glynn was denied effective assistance of counsel. (*People v Baldi*, 54 NY2d 137; *O'Sullivan v Boerckel*, 526 US 838; *Strickland v Washington*, 466 US 668; *People v Benevento*, 91 NY2d 708; *People v Ortiz*, 76 NY2d 652; *People v Lawrence*, 27 AD3d 1091; *People v Caccavale*, 305 AD2d 695; *People v Coleman*, 294 AD2d 843; *People v Wise*, 64 AD2d 272; *People v Hawkins*, 11 NY3d 484.) III. Taken together, the circumstances deprived Mr. Glynn of a fair trial. (*People v Tartaglia*, 35 NY2d 918.)

*Gregory S. Oakes, District Attorney*, Oswego (*Mark Moody* of counsel), for respondent. I. The trial court was not biased or prejudiced against defendant, and, therefore, defendant was not denied a fair trial. (*People v Moreno*, 70 NY2d 403; *People v Baker*, 64 NY2d 1027; *People v Muhammad*, 17 NY3d 532; *People v Horton*, 18 NY2d 355; *Matter of Murphy*, 82 NY2d 491; *People v Smith*, 63 NY2d 41, 469 US 1227; *People v Tartaglia*, 35 NY2d 918; *People ex rel. Stickle v Fay*, 14 NY2d 683; *People v Bennett*, 14 NY2d 851; *People v Jones*, 143 AD2d 465.) II. Defendant received effective assistance of counsel during the entire case. (*People v Baldi*, 54 NY2d 137; *People v Henry*, 95 NY2d 563, 547 US 1040; *People v Taylor*, 1 NY3d 174; *People v Lawrence*, 27 AD3d 1091; *People v Caccavale*, 305 AD2d 695; *People v Contes*, 60 NY2d 620; *People v McDaniel*, 13 NY3d 751; *People v Danielson*, 9 NY3d 342.) III. Defendant was not deprived of a fair trial because no errors occurred. (*People v Tartaglia*, 35 NY2d 918.)

## OPINION OF THE COURT

Pigott, J.

The central issue in this case is whether the County Court Judge's failure to recuse himself from the case deprived defendant of his right to a fair trial. We conclude that it did not.

Defendant was indicted for various drug offenses arising from an undercover operation involving the sale of marihuana. At a *Huntley** hearing, the County Court Judge informed the parties that he may have either represented or prosecuted defendant in

---

* *People v Huntley*, 15 NY2d 72 (1965); CPL 60.45.

the past. Neither party objected to his continuing to preside over the matter.

At a later hearing, however, defendant requested that the judge recuse himself, basing his request solely on the judge's prior representation of him on unrelated criminal matters. Not recalling anything about those representations, the judge commented that defendant had been arrested 39 times and that he assumed that defendant "had a large majority of the defense bar at some point representing [him]." The judge ultimately found no reason to disqualify himself and denied the motion.

The judge proceeded to a discussion of the appropriate sentence if defendant were to accept a negotiated plea. He reviewed the presentence investigation and noted that the report showed defendant had never had a job "on the books," had smoked marihuana daily for 32 years, and had an extensive criminal history. Additionally, the judge noted that, according to the presentence investigation report, defendant owed substantial sums in back child support for his 10 children. The judge continued by remarking that because the youngest child was only seven years old defendant was "going to owe well over a million dollars in child support." In light of the report, the judge indicated that he would sentence defendant to four years' incarceration.

The discussion then returned to the recusal request, and defendant argued this time that the judge was biased and prejudiced against him. The court noted that it had suppressed certain evidence, thus pointing out that it was not showing any bias against defendant. Defendant responded that the judge "didn't do [him] any favors" because the judge had to follow the law. At that point, defense counsel attempted to stop defendant from engaging in a colloquy with the court, stating:

> "Your Honor[,] [defendant] has not been cooperating with me when I ask him to do something he doesn't do it, he never shows up to my office except for once. Judge and for the record your Honor on that [Huntley] hearing you suppressed two major statements, however one was, is going to be permitted. So I guess you were abundantly fair you know and I think you are. The offer is very, very reasonable Judge. For the record. And I'm hoping that my client takes this based upon the facts and circumstances surrounding his case."

At a later hearing, defendant asked the court for a new attorney based on the statements made by defense counsel. The court ultimately relieved defense counsel and assigned new counsel of defendant's choosing.

After a jury trial, defendant was convicted of criminal possession of marihuana in the second degree (Penal Law § 221.25), criminal sale of marihuana in the second degree (Penal Law § 221.50), criminal possession of marihuana in the fourth degree (Penal Law § 221.15) and criminal sale of marihuana in the fourth degree (Penal Law § 221.40).

Defendant appealed arguing, among other things, that the County Court Judge should have removed himself from the matter and that he was denied the effective assistance of counsel. The Appellate Division affirmed the judgment (93 AD3d 1341 [4th Dept 2012]), holding that the judge's recusal was not warranted on any basis and that defendant received meaningful representation.

A Judge of this Court granted defendant leave to appeal (19 NY3d 973 [2012]).

## I.

Unless disqualification is required under Judiciary Law § 14, a judge's decision on a recusal motion is one of discretion (*see People v Moreno*, 70 NY2d 403, 405 [1987]). "This discretionary decision is within the personal conscience of the court when the alleged appearance of impropriety arises from inappropriate awareness of nonjuridical data" (*id.* [internal quotation marks omitted]). We have held that for any alleged bias and prejudice to be disqualifying it "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case" (*id.* at 407, quoting *United States v Grinnell Corp.*, 384 US 563, 583 [1966]; *see also Berger v United States*, 255 US 22, 31 [1921] ["bias or prejudice which can be urged against a judge must be based upon something other than rulings in the case"]). This Court's review in this respect is limited to whether the judge abused his discretion as a matter of law (*see Moreno*, 70 NY2d at 407).

Defendant does not allege any statutory grounds for disqualification under the Judiciary Law and concedes that the judge was not required to recuse himself simply because he had previously defended or prosecuted defendant (*see People v Lerario*, 43

AD3d 492, 492 [3d Dept 2007]; *see generally People v Tartaglia*, 35 NY2d 918, 919-920 [1974]). Rather, defendant argues that the judge was biased and prejudiced against him, as demonstrated by his "inappropriate" comments about his character. Under these circumstances, defendant argues, recusal was warranted. We disagree.

The judge's comments were not indicative of bias or prejudice. Rather, the comments were based on the information contained in the presentence investigation report and made during the course of the judge's execution of his responsibilities in presiding over the matter. Further, there was no other record evidence that actual bias or prejudice existed. Indeed, the judge sua sponte raised the issue of his prior relation with defendant and could not recall any particulars of the past criminal matters. Thus, the court's refusal to recuse itself was not an improvident exercise of discretion.

## II.

■■ Defendant next contends that both his original and later appointed defense counsel engaged in egregious and prejudicial conduct that demonstrated they were not devoted to his best interests. As it pertains to his first attorney, he points to two facts. The attorney did not take the opportunity, which the judge gave him, to request that the judge disqualify himself. He also told the judge that defendant was not cooperating with him and stated for the record that the judge was "abundantly fair" to defendant. Defendant argues that his first attorney thus became a witness against him, taking a position adverse to his interest.

As it pertains to his second attorney, defendant argues that the attorney had multiple inappropriate and contentious exchanges with the judge that undermined defendant's case. He points to instances where the attorney accused the judge of being "sarcastic," "down right mean" and "cruel." Many of the comments were personal attacks on the judge and did not serve any purpose or strategy.

Although the first attorney took it upon himself, unnecessarily, to alert the court that defendant had not been cooperating with him and expressed his opinion on defendant's recusal motion, he was replaced upon defendant's request. Thus, the assignment of the new attorney remedied any harm (*see generally People v Mitchell*, 21 NY3d 964 [2013]).

Further, while we do not condone the second attorney's alleged egregious comments and behavior, they were made outside

the presence of the jury, and he otherwise provided meaningful representation to defendant. Among other things, he adequately attacked the credibility of the witnesses and effectively brought out on cross-examination deficiencies in the evidence. Thus, under our case law, defendant was not denied effective assistance of counsel (*see People v Benevento*, 91 NY2d 708, 712-713 [1998]).

### III.

Defendant's remaining contention, that the entirety of the circumstances of the case deprived him of a fair trial, is without merit.

Accordingly, the order of the Appellate Division should be affirmed.

ABDUS-SALAAM, J. (dissenting). I agree with the majority that the trial judge did not abuse his discretion as a matter of law in refusing to recuse himself and that the conduct of defendant's first attorney did not rise to the level of ineffective assistance of counsel. Nonetheless, I cannot concur in the majority's view that defendant's second attorney provided him with meaningful representation. The hallmark of meaningful representation is the provision of reasonably competent legal advocacy by "an attorney devoted to the client's best interests" (*People v Ortiz*, 76 NY2d 652, 656 [1990]). At critical junctures in the proceedings in this case, however, defendant's second attorney abandoned his client's interests to settle a long-standing personal dispute with the judge, and otherwise undermined his client's defense. Thus, defendant was denied the effective assistance of counsel, and his conviction should be reversed. Because the majority concludes otherwise, I must respectfully dissent.

Under the State and Federal Constitutions, a defendant has a right to the effective assistance of counsel (*see* US Const 6th Amend; NY Const, art I, § 6; *People v Baldi*, 54 NY2d 137, 146 [1981]). Under the New York State Constitution, that guarantee entitles the defendant to "meaningful representation" (*People v Oliveras*, 21 NY3d 339, 346 [2013]; *Baldi*, 54 NY2d at 146). A defense attorney fails to provide meaningful representation when counsel's performance falls below an objective standard of reasonableness and deprives the defendant of a fair trial (*see People v Turner*, 5 NY3d 476, 485 [2005]; *People v Hobot*, 84 NY2d 1021, 1022 [1995]). Upon reviewing a claim of ineffective assistance of counsel, this Court must reverse the defendant's

conviction if "the cumulative effect of [defense] counsel's actions deprived defendant of meaningful representation," even though each error, taken individually, might not warrant reversal (*People v Oathout*, 21 NY3d 127, 132 [2013] [internal quotation marks and citation omitted]). In addition, while this Court "would, indeed, be skeptical of an ineffective assistance of counsel claim absent any showing of prejudice," the existence of specific prejudice caused by counsel's errors is "not [an] indispensable element in assessing meaningful representation" (*People v Stultz*, 2 NY3d 277, 283-284 [2004]; *see People v Ennis*, 11 NY3d 403, 412 [2008]). In the instant case, defendant's second attorney committed a series of errors that, viewed in totality and in context, warrant reversal of defendant's conviction.

By the time defendant's second attorney, Salvatore Lanza, Esq., entered the case, defendant faced a tense situation. At that point, there appeared to be considerable friction between defendant and the trial judge, which resulted from the judge's negative comments about defendant's background during plea negotiations and defendant's motion to remove the judge from the case. Indeed, upon counsel Lanza's arrival in court, the judge continued to take a dim view of defendant; in response to counsel's request for a more lenient plea bargain on the ground that "most people don't like to go to jail," the judge snapped back, "Most people don't sell pounds and pounds of marijuana, allegedly, okay?" Clearly, then, the situation called for tact and caution to ensure that the court would not be dismissive of defendant's evidentiary arguments at trial or, in the event of a conviction, any requests for leniency at sentencing.

However, far from tactfully representing his client's best interests, counsel went out of his way to antagonize the court for reasons that had nothing to do with this case or defendant's interests. Specifically, during a police witness's testimony at trial, counsel objected to the witness's description of certain photographs on defendant's cellular telephone, and the court held a sidebar conference. Counsel elaborated on his objection at the sidebar, and the judge noted that counsel was taking a "sarcastic" tone with him. Counsel retorted:

> "No, Judge, you are on some agenda. You are on an agenda. You have been since People versus Alan Jones. I am not going to put up with it at my age. I am going to make a record of your conduct against me. I am going to make a record and I am not going

> to stop making a record. . . . You are the boss, Judge. You are the boss of this court. You do what you want to do. I don't like it when you are being sarcastic to me, and you are just down right mean. I am fifty-one years old and I have known you for twenty-four years, and I am not going to trash the law that way. It is not right. Proceed. I will make a record every time you are so cruel to a fellow attorney and Officer of this Court. You have been doing it since Alan Jones. I am not putting up with it. I told you that. If we have to go to [the supervising judge], I am going to go. You made a sarcastic remark to an attorney practicing twenty-four years. You are trying to belittle me and embarrass me in front of my colleagues. It is wrong. I have known you a long time. It is wrong what you are doing. Stay quiet."

By impugning the court's fairness and civility, counsel completely failed to advance any strategic interest of his client or otherwise aid the defense. To the contrary, counsel's outrageous comments made it more likely that the court would discount any future objections from counsel as baseless complaints by someone bearing a personal grudge against the court.

Counsel continued this misconduct at sentencing, thereby diminishing defendant's chances of receiving a more lenient sentence. After asking the court to impose a lenient sentence in light of alleged weaknesses in the trial evidence, counsel said:

> "You have been writing, and you are not listening to this. . . . I think you know what I think, Judge. I think you ought to be upset. You ought to be upset when you heard that testimony [at trial], and it was all over the place, and then the officer said, 'Oh, I made a mistake. Oh, gee, that is an incorrect number.' He made a mistake. How many mistakes were made, and they never even contacted you. They never even told you. You should have been upset, but, you know, you don't care. You don't care. All right, the police made a mistake. You don't care about it. . . . [T]hat doesn't concern you, and we are here. . . . You have to look at the papers, and it's obvious to me that all the months he was on this case and other counsel, you never even looked at the file. Why do I say that? The photographs said

one day earlier. Why didn't you catch that? Why didn't you catch the different numbers on the weight and all their inconsistencies, and they never even decided to tell you and everything is fine and dandy and you are going to accept it. You were a defense counsel once. You even represented [defendant]. You represented him and you represented him a number of times. We have no problem with that. You are a fair man, a fair judge. . . . You have alternatives here. But, you know, like it's comfortable. You are going to do the comfortable thing. You don't like a lot of waves. . . . You don't want to be on TV. You have got bigger plans, and I know that. Instead of doing what is the right thing to do and sentence him alternatively, you are going to do what you are going to do, take the safe route, and that is how I have known you. . . . We are ready for sentence, Judge. We know what you are going to do. You always do the same thing."

Apparently not content to simply accuse the judge of choosing convenience over "the right thing," counsel later told the judge:

"So why don't you just get on with sentencing just because I know what you are going to do. You are going to play it safe, just how you always do it instead of dismissing these charges from the get-go when they should have been dismissed at the close of the People's case. You took the safe way out and you said, 'Oh, let the jury decide.' Why are you a judge? Why are you sitting there?"

Of course, counsel's claims that the judge was apathetic, ignored principle in favor of expediency and had failed to do his duty could not have helped defendant or endeared him to the court. In fact, immediately after counsel's rant, the court sentenced defendant to an aggregate prison term of six years, consisting of a four-year prison term, a consecutive two-year prison term and two concurrent one-year definite jail terms, whereas the court could have sentenced defendant to an aggregate concurrent prison term of 1½ years (see Penal Law §§ 70.25, 70.70 [3] [b] [iii]). Notably, before trial—and before counsel's egregious behavior—the court had offered defendant a determinate four-year prison term in exchange for his plea of guilty to criminal possession of marihuana in the second degree, in full satisfaction of the indictment. In short, confronted with an already

difficult situation, counsel decided to repeatedly antagonize the judge and make matters worse for his client without any strategic reason for doing so, thus failing to meet reasonable professional standards of competence.

In addition to those inexplicable outbursts, counsel improperly gave the jury the impression that defendant had no viable defense and was worthy of derision. At one point, counsel prefaced his question to a witness by stating, "I can only do what I can do," thus possibly indicating that there was little he could do to defend his client. Later, counsel mocked defendant's mannerisms, asking another witness whether defendant had said, "Dude," and adding, "he talks like that, doesn't he?"

Beyond those inappropriate remarks, counsel suggested that, rather than simply holding the People to their burden of proof, the jury should decide the case based on whether it believed the officers' testimony or the defense theory of the case. When questioning a police witness about whether he had any photographic proof that one of the charged marijuana sales had occurred, counsel asked, "It is just your word [against] my client's word, right?" In summation, counsel told the jury that he was "not going to put [defendant] on the stand so [the prosecutor] can cross-examine him until the cows come home." By first urging the jurors to weigh defendant's "word" against that of the People's witnesses and then telling them that they did not hear defendant's "word" because counsel feared subjecting it to cross-examination, counsel invited the jury to speculate that defendant did not take the stand because he was a dishonest person who could neither deliver testimony that would withstand cross-examination nor offer any credible rebuttal to the People's proof.

Accordingly, although the individual impact of each of counsel's missteps outlined above might not warrant reversal of defendant's conviction, I believe that the cumulative effect of counsel's incendiary statements to the court and prejudicial comments to the jury deprived defendant of a fair trial and sentencing proceeding (*see Oathout*, 21 NY3d at 132; *cf. People v Flores*, 84 NY2d 184, 188-189 [1994]).

The majority does not dispute that counsel's vituperative remarks about the judge "did not serve any purpose or strategy" (majority op at 619), but it insists that counsel provided meaningful representation on the whole because he effectively cross-examined the People's witnesses and refrained from criticizing the judge in the jury's presence (*see id.* at 619-620).

However, defendant's right to an effective attorney "mean[t] more than just having a person with a law degree nominally represent him upon a trial and ask questions" (*People v Bennett*, 29 NY2d 462, 466 [1972]). Furthermore, counsel effectively eliminated any progress he had made in discrediting the People's witnesses by arguing in summation that defendant did not have the credibility to stand up to the same kind of cross-examination to which he had subjected those witnesses. In addition, although counsel did not denigrate the judge in front of the jury, counsel's intemperate remarks also risked distracting the judge from seriously entertaining defendant's legal objections at trial. And, counsel's misbehavior may have influenced the judge's decision to sentence defendant to consecutive prison terms in response to counsel's provocation.

In sum, several times during the proceedings in County Court, defendant's lawyer essentially left him to fend for himself while counsel engaged in a series of personal spats with the trial judge. Moreover, counsel led the jury to believe that defendant had no credibility, little dignity and no real defense. Standing trial with years of his life on the line, defendant sat in court and looked on as his lawyer fought with the judge, insinuated that defendant was a liar and caricatured him as a buffoon. No one in that situation would seriously believe that he or she was receiving the fair trial guaranteed by the State Constitution. I certainly would not, and therefore I dissent and vote to reverse the order of the Appellate Division.

Chief Judge Lippman and Judges Graffeo, Read and Smith concur with Judge Pigott; Judge Abdus-Salaam dissents and votes to reverse in an opinion in which Judge Rivera concurs.

Order affirmed.