OPINION OF THE COURT
Richard A. Dollinger, J.
In this application, the Public Defender, appointed as a special counsel to the applicant to advocate for the appointment of publicly-funded counsel in a family custody dispute, seeks recusal from this court and an order in limine to allow hearsay testimony during a hearing on applicant’s claim.
In a prior opinion, this court held that it had the power to review an applicant’s claim that they are eligible for appointed counsel under the County Law or any other New York statute providing for the appointment of counsel. (Carney v Carney, 54 Misc 3d 411 [Sup Ct, Monroe County 2016].) The court further held that it had the power, under state law, to impute income to the applicant because the statute’s use of the phrase “unable to obtain” counsel is interpreted to mean that the applicant was “incapable” of retaining counsel. Because this applicant, by virtue of his admitted training, skill, and talents, has the capability to earn higher income, the court held that he has the burden of proof—he must show that he is incapable of earning an amount in excess of the income-based criteria for appointment of counsel.
In the prior opinion, this court commented on its previous experience with the applicant. The court concluded that based on the applicant’s conduct and testimony in previous proceedings, there was a “shadow of skepticism” over previous representations made by this applicant. The court noted that the applicant has previously misled the court. The court had previously incarcerated the applicant for violations of court orders and substantially restricted his access to his children because of his behavior. Based on these observations, articulated by the court in its earlier opinion, the Public Defender now seeks recusal from this court, arguing that without it, the fairness or the appearance of fairness of the underlying proceeding will be forfeited.[1]
The court notes that nowhere does the Public Defender or the applicant contest the accuracy of the court’s comments or *949 conclusions regarding the applicant’s prior behavior in the proceedings. The Public Defender does not dispute that the applicant’s representations in prior sworn statements were misleading or untruthful, or that his behavior in violating explicit court orders warranted incarceration. In seeking recu-sal, the Public Defender simply suggests that the court’s observations, drawn from prior proceedings, have compromised the court’s sense of fairness.
The Public Defender does not cite to any specific portion of the judicial statutes that require recusal. Judiciary Law § 14 requires recusal if this court is “interested” in the proceeding.[2] This court has no “interest”—as that word is defined in the Judiciary Law—that precludes it from hearing this case. The Public Defender points to the Rules of Judicial Conduct, which require recusal if the court’s impartiality might reasonably be questioned in instances in which “the judge has a personal bias . . . concerning a party . . . or . . . has personal knowledge of disputed evidentiary facts.” (22 NYCRR 100.3 [E] [1] [a] [i].) This court has no personal bias against the applicant. A review of the history of this case demonstrates that this court gave this father repeated opportunities to have parenting time with his children. The court sought to accommodate (often over his ex-wife’s objections) the father’s time with his children. The court gradually increased penalties and reduced the father’s parenting time in response to his conduct. The applicant father does not contest these facts or the court’s prior conclusions.
Absent a legal disqualification under Judiciary Law § 14, a trial judge is the sole arbiter of recusal. (People v Moreno, 70 NY2d 403, 405 [1987].) For any alleged bias and prejudice to be disqualifying it “must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case” (id. at 407; 22 NYCRR 100.3 [E] [1] [a]). In short, to provide a basis for recusal, the court rules require that the bias or prejudice must be based upon something other than the rulings made or the facts developed in this case.
*950 New York and federal court decisions affirm that only extrajudicial facts justify a judge’s recusal. In People v Glynn (21 NY3d 614, 618 [2013]), a judge, after reading a presentence investigation report, commented in court on the fact that the defendant had never held a job, had smoked marijuana for 32 years, had an extensive criminal history, fathered numerous children, and would end up owing more than a million dollars in child support. The defendant characterized these comments as “ ‘inappropriate’ comments about his character” (id. at 619). The Court of Appeals held that the failure of the judge to recuse himself was not an abuse of discretion: “We have held that for any alleged bias and prejudice to be disqualifying it ‘must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.’ ” (Id. at 618, citing United States v Grinnell Corp., 384 US 563, 583 [1966].) In other New York examples, a court declined to recuse itself just because the court’s prior decisions fed a litigant’s fear that the case was in danger of dismissal from the court. The court in Brady v 450 W. 31st St. Owners Corp. (2014 NY Slip Op 31879[U] [Sup Ct, NY County 2014]) applied the rule from People v Glynn and held that its earlier decisions against the litigant were not influenced by any “extrajudicial” bias. The mere fact that the court disapproved of the litigant’s position was an insufficient justification for the recusal motion and “smacks of judge shopping.” (Id. at *9.) Other trial courts have taken the same stance. In People v Nathan (29 Misc 3d 1209[A], 2010 NY Slip Op 51760[U] [Mt. Vernon City Ct 2010]), the court held it was not disqualified by virtue of making remarks construed as adverse to a particular party prior to the conclusion of a trial, citing United States v Grinnell Corp. In Hurrell-Harring v State of New York (20 Misc 3d 1108[A], 2008 NY Slip Op 51276[U], *2-3 [Sup Ct, Albany County 2008]), the trial judge, echoing the sentiments of the Court of Appeals and his trial court colleagues, added:
“Neither the formation of an opinion on a question of law nor judicial rulings in a litigation constitute grounds for a claim of bias or prejudice on the part of a judge. The phrase ‘personal knowledge of disputed evidentiary facts’ as set forth in the Court Rules refers to knowledge extrajudicially obtained rather than knowledge obtained in my official capacity during the course of the proceeding.” (See also D.I. v S.I., NYLJ, Sept. 23, 2008, at 25, col. 3, *951 240 NYLJ 59, 2008 NY Misc LEXIS 6033 [Sup Ct, Westchester County 2008] [recusal denied when a litigant, denied permission to relocate with a child, challenged the court’s conclusion and sought recu-sal because to do so would allow the litigant to judge-shop]; but see Matter of Johnson v Hornblass, 93 AD2d 732 [1st Dept 1983] [judge disqualified because he visited a litigant in prison and was a possible witness to events and therefore the appearance of justice would be better served by recu-sal].)
In a recent decision, a trial court ordered an attorney, who refused to stop arguing, out of the courtroom. (U-Trend N.Y. Invs. L.P. v US Suite LLC, 51 Misc 3d 1211[A], 2016 NY Slip Op 50553[U] [Sup Ct, NY County 2016].) The litigant argued that the court had a “predisposed opinion of her client’s member, [a litigant], based on his prior testimony in [the case]” (id. at *3). The court, in declining recusal, noted that “any opinion that [the] Court may hold, if any, are strictly based on the record” (id.). In addition, the court had presided over the matter for years, conducted numerous hearings and appearances, reviewed more than two dozen motions, presided over conferences and rendered prior opinions. The court held it would be “wasteful” to assign the matter to another judge, especially where no grounds for recusal were met. (Id. at *3-4.)
The Public Defender does cite one Court of Appeals case in which the Court held that a trial court, who offered an opinion regarding the credibility of a witness, should have been recused for “injudicious comments.” In Matter of Kelvin D. (40 NY2d 895 [1976]) (cited by the Public Defender), the Court of Appeals did not directly address the recusal question. It made no analysis under section 14 of the Judiciary Law. It simply concluded, in a juvenile delinquency hearing, that there were a series of “acrimonious exchanges” between the court and counsel respecting the conduct of the trial and credibility of witnesses, and the trial court erred in failing to disclose important documents (id. at 897). Because a new hearing was required, the Court stated that “prudent policy” dictated that the case be assigned to a new judge (id.). Because this case does not address the discretionary recusal issue under the Judiciary Law discussed at length in the other cases cited above, including more recent Court of Appeals determinations, *952 this court declines to follow Matter of Kelvin D. in deciding the recusal issue here.[3]
The federal courts, including the Supreme Court, have adopted the same rationale when considering a request for re-cusal based on judicial comments on facts uncovered during a proceeding. As the Supreme Court has observed, “judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.” (Liteky v United States, 510 US 540, 555 [1994].) In United States v Grinnell Corp., the trial judge commented on evidence, based on depositions and briefs which the parties had offered to him. According to the Supreme Court his “adverse attitude [ ]” reflected “his view that, if the facts were as the Government alleged, stringent relief was called for” (Grinnell at 583). The trial judge had advised the defendants in a pretrial conference to settle, explaining “[y]ou would do better to get together with the government rather than run the risk of what I would say from what I have seen. Let me just assure you of that” (id. at 581). The judge added: “There is no use in discussing it with me. I have read enough to know that if I have to decide this case on what I have seen from the government you will not be in a position at this stage to agree to it.” (Id. at 581-582.)[4] The Court declined to require recusal. (United States v Grinnell Corp., 384 US at 583.) Furthermore,
“opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.” (LoCascio v United States, 473 F3d 493, 495-496 [2d Cir 2007]; Baez v Majuri, 2011 US Dist *953 LEXIS 67198 [ED NY, June 22, 2011, No. CV-10-3038 (BMC)(WP)].)
The Supreme Court has intoned that the bar for establishing that statements (by a court based on evidence before it) rise to a level to justify recusal is high. “[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.” (Liteky v United States, 510 US at 555.) The Fourth Circuit added its voice to this rationale in United States v Williamson (213 Fed Appx 235 [4th Cir 2007]): “[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion. . . . [T]hey . . . can only in the rarest circumstances evidence the degree of favoritism or antagonism required [to make fair judgment impossible] . . . when no extrajudicial source is involved.” (Id. at 237-238.)
New York courts have permitted trial judges to take an active role in facilitating the truth-seeking process. (People v Moulton, 43 NY2d 944 [1978].) The Court of Appeals has reminded trial judges:
“ ‘The trial judge has the responsibility for safeguarding both the rights of the accused and the interests of the public in the administration of criminal justice. The adversary nature of the proceedings does not relieve the trial judge of the obligation of raising on his or her initiative, at all appropriate times and in an appropriate manner, matters which may significantly promote a just determination of the trial.’ Under that standard, as the commentary to it reveals, ‘it is appropriate for the trial judge from time to time to intervene in the conduct of a case. Thus, when it clearly appears to the judge that for one reason or another the case is not being presented intelligibly to the jury, the judge is not required to remain silent. On the contrary, the judge may, by questions to a witness, elicit relevant and important facts. The judge may interrogate a witness after a cross-examination that appears to be misleading to the jury.’ ” (People v Yut Wai Tom, 53 NY2d 44, 56-57 [1981], citing American Bar Association Standards Relating to the Administration of Criminal Justice, Special Functions of the Trial Judge [1978].)
New York courts have struggled to exactly define a trial court’s role. In People v Jamison (47 NY2d 882, 883 [1979]), the Court *954 of Appeals stated that “neither the nature of our adversary-system nor the constitutional requirement of a fair trial preclude a trial court from assuming an active role in the truth-seeking process.” In People v Arnold (98 NY2d 63, 67 [2002]), the Court added there is no absolute bar to a trial court asking a particular number of questions of a seated witness. In Matter of Veronica P. v Radcliff A. (126 AD3d 492, 492 [1st Dept 2015]), the Court approved a trial referee properly asking questions throughout the proceedings that “advance [d] the goals of truth and clarity.” In Matter of C.H. v F.M. (130 AD3d 1028 [2d Dept 2015]), the Court rejected a litigant’s contention that the trial court’s questioning of a witness during her testimony, which included pointed and persistent challenges to her credibility, was inappropriate, adding that the court’s conduct did not operate to deprive the litigant of a fair trial. (See also Matter of Dominique M., 85 AD3d 1626 [4th Dept 2011] [the trial court questioned several witnesses in a juvenile delinquency proceeding, but such questioning was nonadversarial].) In another context, trial courts, especially in matters involving families, have been permitted to call their own witnesses to assist in the truth gathering process. (Matter of Kyle FF, 85 AD3d 1463, 1464 [3d Dept 2011] [in a juvenile delinquency proceeding, the Court noted that the trial court is “vested with the discretion to call witnesses . . . and may assume ‘a more active role in the presentation of evidence in order to clarify a confusing issue or to avoid misleading the trier of fact’ ”]; see also Matter of Washington v Edwards, 137 AD3d 1378, 1379 [3d Dept 2016] [“(c)ertainly, a Support Magistrate ‘may properly question witnesses to insure that a proper foundation is made for the admission of evidence and question a witness in an effort to clarify confusing testimony as well as to facilitate the orderly and expeditious progress of the hearing’”].) Against this background, this court’s conclusions regarding the applicant’s prior testimony and its veracity, based on uncontroverted evidence from earlier proceedings, would be similarly justified.[5]
This court has taken a series of unprecedented steps to preserve the integrity of the application process. This court could have simply denied the application for appointment of counsel, without a hearing. The court could have simply had the applicant make a case for appointment of counsel without legal assistance, but it instead appointed the Public Defender *955 to present his case. In addition, rather than directly cross-examine the applicant regarding his finances and income potential, this court has appointed special counsel to question the applicant and examine his potential income capability. By allowing the attorney to question the applicant, the court avoids directly cross-examining him, even though the New York courts have permitted judges to do so.[6]
This court concludes that it can be impartial and conduct a fair hearing on the applicant’s eligibility for a publicly-funded attorney. The court’s observations regarding the applicant’s veracity are based solely on prior proceedings and unchallenged prior judicial factual determinations. The applicant’s prior statements and conduct in interacting with this court and his family and complying with court orders provide a reasoned basis for questioning his truthfulness in the past. Recusal of this court based on a bias from extrajudicial sources is neither required nor justified.
This court acknowledges that the Public Defender’s motion raises a difficult question. The Public Defender suggests that the rationale advanced by this court in ordering a hearing was that the court did not believe the applicant and therefore was impinging on his right to counsel solely on the basis of the court’s prior determination that he lacked veracity. This court understands the Public Defender’s concern. An applicant’s prior behavior, no matter the degree of its culpability or extent of its harm, should not impact whether counsel is appointed. Put succinctly, could this court deny the appointment of counsel simply because it concluded that the applicant was being untruthful during the hearing on his application? The answer, in order to fulfill the command of the court-appointed attorney statutes, has to be yes. The legislature has told this court to conduct that inquiry and make an evaluation; credibility can be—and should be—part of that analysis.
The Public Defender also claims that bias is demonstrated in the court’s implementation of a “one-of-a-kind” proceeding and suggests that this court is handling this matter different from other cases. This argument is partly correct on both counts. The hearing required by this court is a “first-of-its-kind” hearing, for which the court could find no precedent, even though, as documented in the earlier opinion, other New York courts *956 have grappled with the question. In addition, the court acknowledges that this case is different from others that have involved the appointment of counsel. One fact—undisputed and gathered solely from proceedings before the court—-justifies the distinction. In this case, this court knows that the applicant is highly skilled and talented—facts never challenged by his counsel. Whether this court holds that as a result of those apparently untapped talents the applicant could earn substantial sums and hence be ineligible for appointment of counsel is the issue to be resolved at a hearing. Whether such a detailed inquiry has been undertaken before by an inquiring court in this state under state law is not evidence of bias on the part of this court. In fact, under the federal system, trial courts are required to conduct an “appropriate inquiry” into a defendant’s financial eligibility before appointing counsel, (United States v Parker, 439 F3d 81, 93 [2d Cir 2006].) When requesting the appointment of counsel under the federal system, the burden is on the defendant to show that he is unable to afford representation. (United States v Barton, 712 F3d 111, 117 [2d Cir 2013]; United States v O’Neil, 118 F3d 65, 74 [2d Cir 1997].) In these federal cases, there is no suggestion that holding a hearing on eligibility and requiring the applicant to prove his entitlement to an appointment of counsel in any way violates the applicant’s constitutional rights or is evidence of a judicial bias against the applicant.[7] In this court’s view, the requirement for a hearing, the assignment of the burden of *957 proof[8] and the right for an advocate to cross-examine the applicant are necessary in order for this court—or any court—to fulfill its command from the state legislature that counsel should only be appointed when the applicant is “financially unable to retain the same.”
Finally, in considering the appearance of impartiality, this court notes that the applicant, who has repeatedly appeared before this court, may consider the court to lack fairness and be incapable of fairly adjudicating his eligibility. This court can understand his suspicion regarding the court’s impartiality. But in all of those prior adjudications, there were no appeals and the court’s findings have never been challenged. In addition, in the federal system, the courts have acknowledged that lack of truthfulness in the form of a “false sworn statement” may be considered by the court in evaluating eligibility for appointed counsel. (United States v Birrell, 470 F2d 113, 115 n 1 [2d Cir 1972].) In this case, the applicant’s truthfulness should be tested by the techniques that are used elsewhere in the civil justice system. (See e.g. Kaufman v Quickway, Inc., 14 NY3d 907, 908 [2010] [use of prior inconsistent statement].) In reaching this conclusion, the court also notes that its prior determinations in this case involved not just the applicant, but his former wife and the mother of these children, who has litigated the issues of her ex-husband’s conduct and his disregard of prior court orders, while spending tens of thousands of dollars to serve what she believes—and what this court has repeatedly determined—are the best interests of her children. If this court, as a result of its accurate depiction of the applicant’s conduct, recused itself from hearing this case, the wife would be eminently justified in concluding that justice has not been done and the appearance would be that the father has avoided the hearing simply because of his prior prevarications and contemptuous behavior. In balancing the notions of fairness to both father and mother, this court declines to grant recusal under the “appearance” standard.
On the hearsay issue, the Public Defender claims that it must introduce hearsay to meet the applicant’s burden of proof. The Public Defender suggests that meeting the burden of proof *958 would require years of “work and education” history from “decades ago.” This suggestion is wildly out of place: to prove his current employment capability, this court is not concerned with “decades ago.” Imputation of income is based on what an individual can do now: not what they did “decades ago.” (Matter of Muok v Muok, 138 AD3d 1458 [4th Dept 2016] [based upon her education and experience, mother has the ability to earn income in the amount of $20,000 per year]; Samimi v Samimi, 134 AD3d 1010, 1012 [2d Dept 2015] [court is not bound by a party’s actual reported income in applying the basic child support obligation, and instead could use that party’s actual earning capacity or impute an amount onto the gross income reported by the party].) In this case, the applicant can testify about his employment efforts based on his own knowledge. He can prove his initiative by his own documents—applications and résumés, information from government-related employment websites. (People v Wiggins, 143 AD3d 451 [1st Dept 2016].) However, the admission of secondhand testimony from employers or his doctorate mentor, offered verbally to the defendant and repeated by him, would fall afoul of the hearsay rule and violate fundamental fairness. (Matter of Anthony QQ., 48 AD3d 1014 [3d Dept 2008].) The Public Defender also claims that he may be precluded from testifying about his services as a “stay-at-home dad” and that his daughters may need to testify, which the court agrees, would be ill-advised. The applicant’s testimony regarding his services as a “stay-at-home dad” would appear to be unobjectionable, as he would be testifying from his personal recollection. In addition, there is no reason that his daughters would need to testify about his “stay-at-home” experience in the recent past as they are already beyond the age where they would require a stay-at-home parent and the children having been predominantly living with their mother.
This court notes that the Public Defender, arguing for admission of hearsay, only cites to cases involving the admission of hearsay in child custody permanency hearings and similar matters. (See e.g. Matter of Carson W. [Jamie G.], 128 AD3d 1501 [4th Dept 2015] [hearsay evidence admitted under statutory authority in permanency hearings]; Matter of Bartlett v Jackson, 47 AD3d 1076 [3d Dept 2008] [hearsay from a child may be admitted in abuse or neglect cases provided it is corroborated by other evidence].) In this proceeding, modeled after the federal procedure, there is no statutory authority for admit *959 ting hearsay or any precedents suggesting that the applicant should be freed from the limitations of the hearsay rule. There is no basis to grant a pretrial motion to allow hearsay when this court cannot determine where or how such testimony would be elicited. The court will consider all testimony, if timely objection is offered, at the time of trial.
For these reasons, this court declines to grant an order of recusal and declines to issue any opinion in limine about the introduction of any evidence in this matter.

. This matter came before the court in a somewhat unusual posture. The Public Defender filed a notice of motion and assigned it a return date, which *949 was four days after its filing, a period less than the time provided by CPLR 2214 (b). Neither the attorney for the child nor the mother’s attorney were noticed. In order to accommodate the motion, the request to be heard, and in view of the short time before the hearing, the court nonetheless notified all counsel to be present in court and, with the exception of the attorney for the child, they were all present.

. The Judiciary Law contains a series of additional disqualifying “interests,” hut none of those are present here. (Judiciary Law § 14.)

. Shepardizing Matter of Kelvin D. finds no other post-1980 New York case citing it for the proposition that “comments” about a witness’s credibility require recusal under the Judiciary Law. It is cited for the proposition that denying a defendant police reports and witness statements before trial violates their due process rights. (People v Rutter, 202 AD2d 123 [1st Dept 1994].)

. The Court in Grinnell also noted that the trial judge in a court statement told the parties:
“I have told you that, forced by you to look [at pretrial submission], my views are more extreme than those of the government; and I have also made you realize that if I am required to make Findings and reach Conclusions I am opening up third-party suits that will make, in view of the size of the industry, the percentage of people involved higher than in the electrical cases.” (United States v Grinnell Corp., 384 US at 582.)

. This court can take judicial notice of its prior proceedings. (Matter of Amaury Alfonso N. v Zaida Iris R., 137 AD3d 713 [1st Dept 2016]; Matter of Wilson v McCray, 125 AD3d 1512 [4th Dept 2015].)

. The court, in its prior opinion, held that the ex-wife’s counsel could cross-examine the applicant regarding his employment capabilities. There is no suggestion in the Public Defender’s papers that this constitutes evidence of bias on the part of the court.

. The dilemma faced by this court was articulated by the Second Circuit Court of Appeals in United States v Harris (707 F2d 653, 658 [2d Cir 1983]):
“[F]alse statements in an application for counsel under the Act are subject to the penalties of perjury . . . The government asserts that this sanction or a civil suit for recoupment is not as effective as an inquiry at the start. The latter, according to the government, prevents its monetary loss from a fraudulent claim for appointed counsel before it occurs, does not present the problems of burden of proof for the government posed by a civil suit or a criminal prosecution, avoids the litigation burden such proceedings entail and completely protects the government’s economic interests, while a criminal prosecution does not and a civil suit for recoupment frequently may not because of the difficulty of locating and levying upon a defendant’s assets. All of this is undoubtedly true, but, as indicated above, these are not the only considerations. In the last analysis, monetary efficiency in this context must give way to the constitutional right to counsel.” (Id.)
This court, in advancing this theory, accepts it in to to, acknowledging the balance of the applicant’s need to prove entitlement to appointed counsel and *957 his constitutional right to a defense, albeit, if financially unable to retain counsel, as New York’s statutes require.

. In other instances, applicants for public assistance have the burden of proof. (See Matter of Albino v Shah, 111 AD3d 1352 [4th Dept 2013] [applicant has burden of proof to show party is eligible for medical assistance].)