The People of the State of New York, Respondent, against
against
Derek Lawrence, Appellant.

Mazzei & Polk, LLC (John J. Marshall, Jr., Esq.), for appellant. District Attorney Nassau County (Donald Berk, Esq., Monica M. C. Leiter, Esq. of counsel), for respondent. 
 Appeal from a judgment of the District Court of Nassau County, First District (William J. O'Brien, J., at trial; Rhonda E. Fischer, J., at sentence), rendered May 22, 2015. The judgment convicted defendant, after a nonjury trial, of sexual abuse in the third degree.
 ORDERED that the judgment of conviction is affirmed. 
Defendant was charged in an accusatory instrument with one count of forcible touching (Penal Law § 130.52) and one count of sexual abuse in the third degree (Penal Law § 130.55). The accusatory instrument was replaced by a prosecutor's information, which broke the alleged conduct into two separate incidents on February 18, 2014: In the first incident, defendant allegedly hugged and kissed the victim, who was the chief of staff for a Nassau County legislator, her will, while rubbing his genitals her, and in the second, later that same day, defendant allegedly came up from behind the victim, hugged her, and touched her breasts. Defendant, who was the legislator's chief of public affairs, was charged with two counts of forcible touching and two counts of sexual abuse in the third degree. Defendant's trial counsel objected, on the ground that the People "just made two charges into four and it's duplicitous just to actually make it more difficult for the trier of fact to see what is happening."
 The District Court subsequently conducted a pretrial Sandoval hearing (People Sandoval, 34 NY2d 371 [1974]). The prosecutor had requested that, if defendant were to testify at trial, the prosecutor should be permitted to inquire whether, on August 22, 2010, defendant had been arrested on charges of assault in the second degree, sexual abuse in the first degree, criminal sexual act in the third degree, and sexual misconduct, whether defendant had pleaded guilty to any of the charges, and, if so, what he had been sentenced to. In fact, defendant had pleaded guilty to assault in the second degree (Penal Law § 120.05). At the hearing, defendant's counsel opposed the prosecutor's request on the ground that "the past crime is just too similar in nature" to the crimes with which defendant was charged. As an alternative, counsel suggested that the prosecutor should be permitted to ask only whether defendant had been previously convicted of a crime. The court ruled that the prosecutor could ask defendant whether he had been arrested on August 22, 2010 and whether he had ultimately pleaded guilty to a class D [*2]felony, "without further elaboration."
 In his opening statement at a nonjury trial, defendant's trial counsel stated that the "theme of this trial" would be the motivation of the victim to accuse defendant of the acts for which he was charged. Counsel argued that the legislator's office had been "dysfunctional" during the time defendant had been working there, and that the victim had made the allegations defendant in order to keep her job. Counsel claimed that defendant's predecessor had filed a complaint the victim with the Equal Employment Opportunity Commission (EEOC). The victim did not report the allegations defendant until approximately one week after the incidents had occurred.
 The victim testified that defendant and the victim shared an office. They had a platonic, work-type relationship. When the victim returned to work from bereavement leave on February 18, 2014, defendant hugged the victim around her shoulders. She testified that, at first, it was comforting, but she subsequently wanted the hug to stop. According to the victim, the hug lasted for seven or eight minutes, and defendant was hugging her too tightly. He kissed both sides of her neck and rubbed his genitals her upper thigh and hip. The victim "pushed back," but she could not break free. Defendant told her, "you know you want this." The victim replied, "I don't think so." The victim did not "call out," as no one else was in the office. The victim eventually broke away from defendant and informed him that she did not get romantically involved with co-workers. The victim sat at her desk for several hours and worked, without talking to defendant, which was unusual. Defendant had never given her "that kind of hug and kiss" before.
 The victim testified that, after several hours, defendant came up from behind her, hugged her around her waist, and rubbed his hands over both of her breasts. The victim was stunned and shocked. She asked defendant why he was doing what he was doing, and asked him to stop. Defendant did not respond. This second incident lasted less than five minutes. Defendant had never made sexual advances to her before February 18, 2014. The prosecutor then asked if the victim and defendant had ever discussed sex while in the office. The victim replied that defendant would bring it up. When the prosecutor asked the victim how she felt when defendant would discuss his sex life, counsel objected to the question, and the objection was sustained.
 The victim further testified that, at approximately 11:35 p.m. on February 18, 2014, defendant had called the victim at home, first on her home phone, and then on her cell phone. She never gave defendant her home telephone number, and she did not know how he had obtained it. On Sunday night, February 23, 2014, the victim called the legislator, who was on his way back to New York from vacation, and told him what had occurred. Counsel's objection to the prosecutor's question regarding the legislator's reaction was sustained.
 The victim further testified that, on Monday, February 24, 2014, she had, among other things, provided a written statement to senior legislative staff regarding what had occurred on February 18th. She contemplated for hours whether she wanted to press charges and file a complaint. After 5:00 p.m., she


decided



to go forward. The prosecutor asked the victim what she had considered when deciding whether to file a complaint and why she had decided to do so. Counsel's objections to the questions were sustained.
The victim testified that a man, who had worked for the legislator before defendant, had filed a verbal complaint against her with the County Legislature's minority chief of staff. [*3]Nothing happened to the victim as a result of the complaint, and the man who had filed the complaint still worked in the Legislative Office Building.
During cross-examination, the victim agreed that only she had direct access to the legislator until defendant became the legislator's chief of public affairs in 2013. She did not recall having a telephone conversation with the legislator on February 18, 2014 in which he had allegedly reprimanded her. The victim agreed that there were other legislators' offices on the floor and other employees in the building on February 18, 2014.
During redirect examination, counsel's objections to several of the prosecutor's questions—what the victim had been thinking while defendant was gripping her, why she had not yelled out, why she had delayed telling the legislator what had occurred for several days, and why she had hesitated in filing a complaint on February 24, 2014—were sustained.
An aide to another legislator whose office was on the same floor as the victim's office testified on behalf of defendant. She stated, among other things, that it was possible that she had had an opportunity to speak to the victim on February 18, 2014. She added that there were two large offices between the victim's office and her office.
During his summation, trial counsel argued that the People had not presented telephone records corroborating that defendant had made late-night telephone calls to the victim and had not called the legislator as a witness to corroborate that the victim had spoken to him on February 23, 2014. Counsel also argued that it was not believable that defendant had hugged the victim for seven or eight minutes. He asserted that, contrary to the victim's testimony, she would have been heard had she called out, as the defense witness and other people were in the building. Instead of leaving after the incident, the victim sat at her desk and continued to work for the rest of the day, with defendant sitting behind her. Moreover, the victim's testimony that she returned to work for the rest of the week and did not speak to defendant was not "logical or credible beyond a reasonable doubt." She had waited five days to contact the legislator and contemplated for an entire day whether or not to file a complaint because, counsel asserted, the incident had never happened.
The District Court (William J. O'Brien, J.) found defendant guilty of one count of sexual abuse in the third degree (a class B misdemeanor), involving the lengthy hug, and not guilty of the other three charges. At sentencing, the prosecutor noted that defendant was on probation for his 2010 conviction of assault in the second degree. The court (Rhonda E. Fischer, J.) stated, among other things, that defendant's probation was based on "allegations that were violent in nature."
Furthermore, "at the time these charges were brought," defendant was in a "position of authority, and [had] a very well respected position in government." Defendant was sentenced to the statutory maximum term of 90 days of incarceration (see Penal Law § 70.15 [2]), and a $1,000 fine, which fine was subsequently reduced to the statutory maximum of $500 (see Penal Law § 80.05 [2]).

On appeal, defendant argues that he was denied the effective assistance of trial counsel because counsel did not present the evidence that he had stated during his opening statement he would present, to wit, that the legislator's office was dysfunctional and that an EEOC complaint had been filed against the victim. Instead, the complaint, which had not been filed with the EEOC, had been informal and verbal, and no details thereof had been elicited at trial. The only [*4]evidence that other people could hear the alleged incident if it had actually occurred was the testimony defense counsel had presented of a legislative aide, who worked in an office far away from where the victim worked. Thus, defendant's trial counsel failed to adequately investigate and prepare for this case. Defendant also argues that his sentence was harsh and excessive.




The People essentially argue that defendant's claims amount to disagreement about trial tactics and strategy. Furthermore, counsel secured an acquittal on three of the four charges. Finally, the sentence imposed was not excessive.
Under the New York standard for ineffective assistance, courts "must examine defense counsel's entire representation of defendant" (People v Oathout, 21 NY3d 127, 132 [2013]) and consider whether trial counsel's performance constituted egregious and prejudicial error such that the defendant did not receive a fair trial (see id. at 131; People v Benevento, 91 NY2d 708, 714 [1998]). A "claim of ineffectiveness is ultimately concerned with the fairness of the process as a whole," and must be objectively evaluated "to determine whether it was consistent with strategic decisions" of a reasonably competent attorney (People v Benevento, 91 NY2d at 712-713; see People v Oathout, 21 NY3d at 132; People v Henriquez, 3 NY3d 210, 225 [2004]). A defendant has been afforded effective assistance of counsel when the evidence, the law, and the circumstances of a particular case, viewed in totality and at the time of the representation, indicate that the attorney provided the defendant with meaningful representation (see People v Wragg, 26 NY3d 403, 409 [2015]; People v Ambers, 26 NY3d 313, 317 [2015]; People v Benevento, 91 NY2d at 712; People v Baldi, 54 NY2d 137, 147 [1981]).
Here, while counsel did not elicit evidence that the legislator's office had been "dysfunctional" or that an EEOC complaint had been filed against the victim, defendant has not established that, had such evidence been elicited, it would be "fairly characterized as clear-cut and dispositive in defendant's favor" (People v McGee, 20 NY3d 513, 518 [2013]). Counsel cross-examined the victim, employing a strategy to impeach her credibility. Among other things, counsel argued that there was no corroboration that defendant had called the victim at 11:35 p.m. on the night of the incident, as no telephone records had been offered in evidence. Counsel asked the victim why she had waited five days to contact the legislator, and why she had not filed a complaint until after 5:00 p.m. on February 24, 2014. Counsel elicited that a complaint had been filed against the victim by a former employee of the legislator. The aide employed by another legislator testified that she may have spoken to the victim on the date of the incident. Counsel had objected to the replacement of the original accusatory instrument with a prosecutor's information that charged defendant with two separate incidents, had obtained a somewhat favorable Sandoval ruling, and had successfully objected to numerous questions by the prosecutor on cross-examination. Finally, counsel obtained an acquittal on three of the four charges. Thus, viewed in totality, defendant received meaningful representation (see People v Greene, 110 AD3d 827 [2013]; People v Johnson, 40 AD3d 1270 [2007]; People v Bradley, 48 Misc 3d 46, 51 [App Term, 2d Dept, 9th & 10th Jud Dists 2015]).
As defendant had been previously convicted of assault in the second degree, the sentence of 90 days of incarceration and a $500 fine was neither harsh nor excessive (see People v Suitte, 90 AD2d 80 [1982]).
Accordingly, the judgment of conviction is affirmed.
MARANO, P.J., TOLBERT and GARGUILO, JJ., concur.
ENTER:
Paul Kenny
Chief Clerk
Decision Date: September 14, 2017